## STOKER v. GOWANS.

### No. 2669.   Decided April 1, 1915 (147 Pac. 911).

1. MARRIAGE—SUFFICIENCY OF EVIDENCE. In a *habeas corpus* proceeding to obtain release of juvenile delinquent from the custody of the superintendent of the State Industrial School, evidence *held* insufficient to establish any legal marriage between the delinquent and plaintiff. (Page 559.)

2. INFANTS—JUVENILE DELINQUENTS—MARRIAGE. The operation of the law governing juvenile delinquents is not suspended merely because a delinquent enters into the marriage relation. (Page 560.)

3. HABEAS CORPUS—CUSTODY OF JUVENILE DELINQUENT—STATUTE. Under the juvenile statute, as amended and re-enacted by Laws 1913, chapter 54, giving the juvenile court jurisdiction over delinquents under the age of eighteen, and making its judgments operative until the delinquent reaches the age of twenty-one years, and providing that all orders of the court shall be under its control until the delinquent reaches such age, the delinquent or anyone in her behalf may apply for a modification of the judgment, and determination of the right of her custody with a right of appeal as provided in section 11, so that the rights of delinquents may be enforced without recourse to *habeas corpus* proceedings. (Page 560.)

4. INFANTS—JUVENILE DELINQUENTS—JURISDICTION. Under the juvenile delinquent statute providing that the juvenile court may order that the juvenile be committed to the State Industrial School, that the court may commit a juvenile to the care of a probation officer, subject to return to court for further proceedings, or may dispose of the matter in any way deemed for the best interests of the delinquent, the act of the juvenile court in making an order of commitment upon the first hear-

ing, and then conditionally suspending it by an order of pro-
bation, and, after violation of the conditions of probation, or-
dering that she be committed, while somewhat irregular, was
not void. (Page 561.)

5.  INFANTS—JUVENILE DELINQUENTS—PROCEEDINGS—NOTICE. Where
the juvenile court, after notice of proceedings to the mother
of a delinquent, and a finding of her unfitness, which was not
disputed or appealed from, made an order of commitment, and
suspended it by an order of probation, and having control of
the delinquent and authority to modify its orders, it might on
a showing of the delinquent's violation of the probation condi-
tions, order her commitment without further notice to the
mother.[1] (Page 562.)

STRAUP, C. J., dissenting.

Appeal from District Court, Third District; *Hon. F. C.*
*Loofbourow,* Judge.

*Habeas corpus* by J. F. Stoker against E. G. Gowans, super-
intendent of the State Industrial School.

Writ denied. Plaintiff appeals.

AFFIRMED.

*J. W. Rozzelle* and *Willard Hanson* for appellant.

*A. R. Barnes,* Atty. Gen., and *E. V. Higgins* and *G. A.*
*Iverson,* Asst. Attys. Gen. for respondent.

FRICK, J.

This is an appeal from a judgment of the District Court of
Salt Lake County denying a writ of *habeas corpus.* The
facts disclosed by the record filed in this court, briefly stated,
are as follows:

On the 25th day of March, 1912, one Guardello Brown, a
probation officer, pursuant to our juvenile court act, filed
a complaint under oath before Alexander McMaster, Judge
of the Juvenile Court of the Third Judicial District, in and
for Salt Lake County, in which one Fern Markham, a minor

---

[1] *Mill* v. *Brown,* 31 Utah 473; 88 Pac. 609; 120 Am. St. Rep. 935.

child thirteen years of age, was duly charged with delinquency; the facts constituting the same being stated in general terms. Notice was duly issued as provided by the act, service of which was duly waived by Anna Markham, the mother of said child. On the 26th day of March, 1912, a hearing was had by said court upon said complaint as provided by the act. After hearing the evidence the juvenile court found that said Fern Markham was of the age of thirteen years; that she was a delinquent child within the purview of the juvenile act; and that said Anna Markham, the mother, was an unfit person to have custody and control of said child. The court thereupon entered the following order:

"It is ordered, adjudged, and decreed by the court that until the further order of this court said Fern Markham be adjudged a delinquent child. It is the order of the court that she be sentenced to the State Industrial School at Ogden, Utah. The sentence, however, is suspended during good conduct and that she discontinue the company she has been keeping. It is the further order of the court that she report to this office once a week."

On the 22nd day of April, 1914, Guardello Brown, "chief probation officer," filed a complaint in writing, but not under oath, before the juvenile court, in which it was alleged that said Fern Markham had violated her promise and the terms and conditions upon which sentence was suspended, and that she continued "to be immoral and to associate with corrupt and immoral people," and the officer prayed that the sentence aforesaid be no longer suspended, and that said Fern Markham be committed to the State Industrial School. Pursuant to said complaint the juvenile court, on the 22d day of April, 1914, made the following order:

"Now, therefore, on motion of Guardello Brown, and it appearing to me for the best good of said Fern, it is ordered that sentence in this case be no longer suspended, and that a commitment to the Industrial School be and hereby is issued."

A commitment in due form was accordingly issued directed to the proper officer, who executed the same by taking said Fern Markham into custody and delivering her to the de-

fendant, the superintendent of the State Industrial School, in whose custody she remained until the *habeas corpus* proceedings were commenced, at which time she was produced before Hon. F. C. Loofbourow, one of the judges of the district court of Salt Lake County. We remark that on the hearing it was claimed that during the suspension of said sentence said Fern Markham, without the knowledge or consent of said juvenile judge, and without the knowledge or consent of her mother, had married one J. F. Stoker, who is the plaintiff in this proceeding. After a hearing before said district judge upon the return made by the said superintendent in which the foregoing facts, except the alleged marriage, were made to appear, said judge denied the writ, and made an order remanding the said Fern into the custody of said superintendent.

Plaintiff appeals, and has assigned a number of errors. It is insisted that the court erred in refusing to hold that by said alleged marriage the right of custody in said superintendent and said juvenile court was *ipso facto* terminated. The district court made no findings of fact; at least there are none in the record.

We have searched the record in vain to find any legal evidence of a marriage between said Fern Markham and the plaintiff. All that is contained in the record upon that subject is this: Anna Markham was called as a witness on behalf of plaintiff, and she testified:

"I am the mother of Fern Stoker. She is a married woman. She was married to J. F. Stoker on the 15th day of August, 1913. * * * She was married without my knowledge or consent."

Fern Stoker was also called as a witness by the plaintiff, but she said nothing about the marriage; nor did plaintiff or any one else testify concerning the same. Now, the question is pertinent: How did the mother know that the plaintiff and Fern were married if the marriage, as she says, took place "without my knowledge or consent"? There is, therefore, not a word of competent evidence in this record showing a marriage. Moreover, under our statute (Comp. Laws 1907, section 1189) it is provided:

"No marriage shall be solemnized without a license there-for issued by the county clerk of the county in which the female resides at the time."

The record discloses that the female in this case resided in Salt Lake County. It is claimed, however, that the marriage occurred in Davis County, an adjoining county of Salt Lake. Our statute also provides that the license issued as aforesaid must be returned to the county clerk within thirty days after the marriage ceremony takes place. It is somewhat strange, therefore, that when there must have been an abundance of competent evidence respecting the marriage, if it was solemnized, that none was produced, not even an eyewitness. Not even the parties in interest testified, although one of them was a witness at the hearing. If the district judge, therefore, had found that no marriage was proved (which he may have done), the finding would not only have been justified by the record, but, in our judgment, it would have been the only finding he could legally have made. The contention, therefore, made by counsel that Fern should be discharged from the custody of the superintendent of the Industrial School because she is a married woman is not borne out by the record.

But, assuming that she did marry, as contended, yet there is nothing in the law governing juvenile delinquents which suspends its operation merely because a delinquent enters into the marriage relation. **2**

Under our juvenile statute, as amended and re-enacted by chapter 54, Laws Utah 1913, the juvenile court has jurisdiction over all delinquent children under the age of eighteen years, and its judgments and decrees are operative until "the child reaches the age of twenty-one years." It is also provided by that act that: **3**

"All orders, judgments, and decrees so made and entered by the court shall be under its control, and may be modified, amended, or recalled at any time until the child reaches the age of twenty-one years."

The law, in almost every sentence, indicates that it was the intention of the lawmaking power to place the custody and control of juvenile delinquents entirely under the jurisdic-

tion of the juvenile courts of this state until such time as they may be legally discharged by those courts, or by this court on appeal, as provided by section 11 of said chapter 54. If, for any cause, therefore, said Fern should no longer have been held in custody as a delinquent child, she, or any one in interest acting in her behalf, could have made application to the juvenile court for a modification of the judgment in which her status was fixed and the right of her custody determined, and that court could then have ordered a hearing upon such application, and have modified its former order or judgment in accordance with the facts. If, upon such a hearing, said court had refused to act in accordance with the facts, or had deprived the "parent, custodian or guardian" (perhaps this would have included her husband, if she had one) of any right, an appeal could have been taken to this court from such order as provided in said section 11. There is ample opportunity given in the act to all interested persons to apply to the juvenile court for the modification or amendment of any order or judgment, and ample power vested in that court to make any change that may seem expedient, proper, or necessary at any time to the end that the rights of all delinquents, as well as those of society, may be safeguarded and enforced without having recourse to *habeas corpus* proceedings.

What has been said, in a measure at least, also answers the contention that the juvenile court lost jurisdiction over the person of said Fern by the suspension of the sentence whereby she was ordered to be committed to the Industrial School. The act provides that the juvenile court may order that the "juvenile be committed to the State Industrial School." It also provides that the court may commit the child to the care of a probation officer, allowing it to remain in its own home subject to the visitation of the probation officer, or such child to report to the court or probation officer as often as may be required, and subject to be returned to the court for further proceedings whenever such action may appear necessary. Further, the court may order that "the juvenile be disposed of in any other way, except to

commit it to jail or prison, that may, in the discretion and judgment of the court, under all the circumstances, be for the best interests of the child, to the end that its wayward tendencies shall be corrected and the child be saved to useful citizenship.''

We thus have an act which practically confers parental powers and duties upon the juvenile court. How can another court thus be called on to review every act of the juvenile court which may in some way and by some parents or guardians be considered inimical to the delinquent? Moreover, how can a law be framed so as to define and provide for every act the court shall take or order that it shall or may make respecting the care, custody, control, or conduct of all delinquent children? To attempt this would be as impossible as it is impractical. It seems to us that by suspending the supposed sentence the court did no more than if it had in the first instance committed Fern to the custody of the probation officer, and had required her to report to the court from time to time, and had thereafter, upon application of such officer, modified the original order or judgment by ordering her committed to the Industrial School. The only difference is that the court made the order of commitment upon the first hearing, and then conditionally suspended its operation, and, after the probation officer made application to the court in which he alleged that Fern had violated the conditions imposed by the court upon which sentence was suspended, then ordered that she be committed. The proceeding may have been somewhat irregular, but, under the provisions of the law, it was not void.

It is, however, also contended that the court exceeded its power by acting without again giving notice to the mother, etc., and in not again giving all concerned a hearing before modifying the order of suspension of sentence. Let us assume that it would have been proper and better to have notified the mother of the officer's application and to have given her, as well as Fern, an opportunity to be heard; yet the failure to do that did not affect the jurisdiction of the court. The juvenile court, after the original notice, always retained jurisdiction of Fern, and, in view that it had found that the mother was an unfit person to have custody and con-

trol of her, and had thus substituted itself as her custodian, under the law (*Mill* v. *Brown*, 31 Utah 473; 88 Pac. 609; 120 Am. St. Rep. 935), we cannot see how the court exceeded its power or jurisdiction. The mother did not dispute the court's findings respecting her unfitness, nor did she appeal from that decision, as she might have done. She, and all others, are therefore bound thereby until modified or vacated. But the order or judgment suspending sentence was, and continued to be, subject to modification and amendment to the same extent as any other orders made by the juvenile court. If, therefore, there is any good reason why the order of suspension and of commitment should be modified or amended in any way, the application should be made to the juvenile court, and that court should be given an opportunity to correct its mistakes, if any have been made. That is manifestly the purpose of the law. If, therefore, an application, by the probation officer or otherwise, is made for a modification, suspension, or change of any order or judgment affecting the custody, control, or conduct of a juvenile delinquent, and although such juvenile is constructively in the custody of such court, yet we think the court should require both the juvenile and those who may be interested in his welfare to be notified of the application, and, if a hearing is demanded, that one should be given before the modification, etc., is made; but the failure to do that is not jurisdictional. At most, it is merely an irregularity which cannot be reviewed on *habeas corpus* proceedings. While it is true that the act provides "the court may hear evidence in the absence of said juvenile," and, no doubt, in many instances it may be necessary to do so, yet it were better if it can be done that the children, especially those over the age of ten years, were permitted to be present and to be heard in their own defense respecting their custody, conduct, and control. The parents or guardian should also be permitted to be present at any hearing affecting the change of custody of the child.

For the reasons stated, therefore, we are clearly of the opinion that the judgment of the district court should be affirmed.    Such is the order.

McCARTY, J., concurs.  STRAUP, C. J., dissents.