Argued July 30, affirmed September 24, petition for rehearing
denied December 3, 1958

ALLEN ET UX *v.* ALLEN ET AL

330 P. 2d 151

*Robert R. Rankin,* Portland, argued the cause for appellants. With him on the briefs was Malcolm J. Montague, Portland.

*James P. Forsyth, Jr.,* and *Janet W. Starkey,* Portland, argued the cause and filed a brief for respondents.

Before Rossman, J., Presiding, and Lusk, Warner, Sloan and O'Connell, Justices.

SLOAN, J.

This is a delicate and difficult case. Plaintiffs-appellants are the adoptive parents of the defendant Debra Jeanne Allen. This is a suit by them attempting to abrogate the adoption proceeding which created that status. The defendant Waverly Baby Home, of Portland, is a licensed child-caring agency, certified as provided by ORS 419.112.

The disposition of the case requires a brief summary of the chronological facts. At the outset of this

case the trial court wisely entered an order impounding the clerk's file, rendering it secret. Unfortunately, the record on appeal and this opinion impair the effect of this order. We will, however, eliminate facts not actually required for decision.

Debra was born in Seattle on May 21, 1950. She was the natural child of a married couple. It is important to note that although this case involves only Debra, there was a brother born to the same parents who was equally involved in all the pleadings and process herein mentioned. We will, for the most part, refer to such proceedings, however, as though only Debra were mentioned therein. The child's father and mother were later divorced and the child abandoned. In July, 1951, she was received into the custody of Waverly Baby Home for care.

On July 27, 1951, a juvenile officer of the circuit court for Multnomah county, department of domestic relations, filed a petition in that court which charged that Debra did not have "parental care or guardianship." This petition also requested that the parents should be cited to appear and show cause why such child should not be adjudged a "dependent ward of the Department of Domestic Relations." The petition further recited that the child was in the actual custody of the Waverly Baby Home. Pursuant thereto, an "informal citation" was issued by the court on January 23, 1952. This citation "requested" the parents to appear before the court on January 31, 1952, in the matter of Debra, an "alleged dependent minor." The "informal" character of this citation is in keeping with the demands of ORS 419.510. Citation was also issued directed to Waverly requiring it to produce the child at that time as provided by ORS 419.506. On that date, January 31, 1952, the mother of said child, the child,

Debra, an authorized representative of the Waverly Baby Home, and a juvenile court counselor appeared before Honorable Virgil H. Langtry, a judge of that court. The father of the children did not appear at this hearing. However, he had been served with citation and had notice thereof. He subsequently executed a valid written consent to the adoption. In addition to this consent he was personally served with notice of the later proceedings hereinafter mentioned. We need make no further reference to him in this opinion. Pursuant to hearing and proceedings there had, the court entered an "order" which "ordered and adjudged" Debra to be a "dependent minor child" and further "ordered and adjudged that the said * * * [Debra] and * * * [her brother] be and are hereby declared dependent wards of this court, so to remain until they arrive at legal age, unless sooner released by due process of law; * * *." To more specifically identify this adjudication with reference to other orders hereinafter mentioned, we shall hereafter refer to this order as the "judgment." The record shows that a copy of this judgment was given to the mother.

It is to be noted that the mother of the child personally appeared at that hearing. The adjudication of the judgment mentioned was confined to the respective rights of the parent and child. The judgment was not concerned with nor did it identify or define the status of any person to whom the custody of the child should be awarded. It did deprive the parents of all rights to the children for all purposes for the period named in the order. Appeal was available from that order. ORS 419.542. Having declared Debra to be a dependent child, the court was empowered to commit her to "* * * the care of some suitable association willing to receive it and embracing in its objects the

purpose of caring or of obtaining homes for dependent or neglected children." ORS 419.552. *Palm v. Smith,* 183 Or 617, 195 P2d 708. Accordingly, a document designated "Temporary Commitment" was also entered by the court addressed to the Waverly Baby Home, reciting that "pursuant to § 93-610, OCLA"[1] (ORS 419.526) "* * * the following named minor [Debra] is hereby temporarily committed to your care, custody and supervision until further order of this court * * *." In the briefs and arguments the judgment above mentioned was termed a "temporary commitment." The judgment itself, as quoted, asserts jurisdiction over these children until they would arrive at legal age or be discharged by law. The only "temporary" act involved in the proceeding was the authorization or direction to Waverly. But even this order was only to be limited by the "further order of the court." Nothing in this "temporary" proceeding limited or impeded the continuing *jurisdiction* of the court. We will refer to this later in this opinion.

On October 20, 1953, the Waverly Baby Home, by its authorized officer, petitioned the same court for a commitment which would authorize consent to adoption. ORS 419.526, 419.538. An affidavit of a juvenile court counselor was also filed reciting that this counselor had made diligent effort to ascertain the whereabouts of the mother. This effort was described in the affidavit as consisting of the mailing of registered letters to what were, by the affidavit, asserted to be the last known addresses of said mother and that the letters were returned undelivered. In reliance upon the affidavit the court entered an order providing for the publication of citation directed to the mother. The

---

[1] This recital is incorrect. The power to commit is derived from ORS 419.522. Palm v. Smith, supra. ORS 419.526 defines the type of commitment to be made.

citation was published but no appearance was made by the mother within the four weeks specified by the order and citation. After the time designated in the citation and upon hearing, an order permanently committing Debra to the Waverly Baby Home was entered. The same order granted to that institution the right to be made a party to a proceeding for the legal adoption of the said child and to give its assent thereto. ORS 419.538. It is to be noted that at the time of this hearing the record shows that the court made a finding that "The children have been wilfully abandoned by the mother for a period of more than one year and both children have been upon the public for support since that day, and even previous to the date of September 12, 1952, * * *."

On December 11, 1953, Waverly placed Debra in the home of plaintiffs for care. Subsequent to the order of November 24, 1953, and on February 8, 1954, plaintiffs petitioned the same court for the adoption of these children. Attached to the petition was a certified copy of the order of commitment and of the consent of the Waverly Baby Home to such adoption in the form required by what was then ORS 109.320. On March 15, 1954, an order of adoption was entered.

During the time the child was committed to Waverly, and since then, she developed behavior problems culminating in a decree on December 15, 1956, determining the child to be mentally deficient and committing her to the Fairview Home at Salem. The demands upon the services of that facility so exceed its capacity that a long waiting list of such committed children exists. Consequently, the plaintiffs are still burdened with the care and problems presented by such a child in their own home. By this proceeding they seek to be relieved of this financial burden as

well as to avoid the disturbing influence the child creates in the family life of plaintiffs and other children. Plaintiffs also seek, by this means, to be relieved of the cost imposed by the state upon the parents of a child committed to Fairview, at such time as she is admitted. The court is not unaware of or unsympathetic to the problem confronting plaintiffs.

Plaintiffs allege two separate grounds by which they seek to accomplish this purpose and abrogate this adoption. One, that the adoption decree was void for the reason that the juvenile department did not have jurisdiction of the mother of the child at the time it entered the order authorizing consent to adoption in lieu of the parent. And, two, that the officials of Waverly Baby Home at all times had knowledge of the mental condition or deficiency of the child and fraudulently failed to notify these plaintiffs thereof. That such alleged fraudulent failure was likewise a fraud upon the court awarding the decree of adoption. They also seek monetary damages from Waverly for medical costs incurred in caring for the child. After very extensive hearing and briefs the trial court entered a decree denying the rights sought by plaintiffs. Plaintiffs appeal, assigning 13 assignments of error. All of them have been considered. In view of the disposition made of this case we need only consider the right of these plaintiffs to bring this suit and the jurisdiction possessed by the juvenile department over the essential parties at the time the order was entered granting Waverly the right to consent to adoption. They are determinative of all the issues presented.

We have given this case the thorough consideration and attention that a proceeding so vitally affecting the welfare of this and other children requires. We have extended our research well beyond that contained in

the briefs of the parties in an endeavor to find every writing that could shed some light on the right of adoptive parents to denounce their obligation to adopted children when unforeseen costs and deficiencies occur.

■■ From the numerous cases considered we adopt the expression of the rule set forth in *Coonradt v. Sailors,* 186 Tenn 294, 209 SW2d 859, 2 ALR2d 880. It is there held:

> "Where one voluntarily assumes the relationship of parent to a child by formal adoption, it cannot be lightly cast aside. The relationship involves duties of care, maintenance and education with rights of custody, control and service of the child. Society has an interest in this relationship, and we think the Legislature alone should supply the procedure to be followed, as well as define the cause, if any, whereby the relationship may be dissolved. In the absence of such a statute the courts will not assume jurisdiction to annul a decree of adoption at the instance of the adopting parent and cast the child adrift to again become a public charge."

Without additional quotation citation is made to the following additional authorities which support the same view. *Department of Social Welfare v. Carollo,* 236 P 821, 107 Cal App2d 211; *In Re Martin's Adoption,* 56 NYS2d 95, 269 App Div 437; *In Re Eaton,* 305 NY 162, 111 NE2d 431; *Stanford v. Stanford* (Tex), 201 SW2d 63; *Kenning v. Reichel,* 148 Minn 433, 182 NW 517, 16 ALR 1016, and the leading case of *Wolf's Appeal* (1888), 10 Sadler (Pa) 139, 22 WN Cas 93, 6 SC 401, 13 A 760; Op of Atty Gen (Or) 1942-44, p 465. Attention is also directed to a very comprehensive and well-edited annotation at 2 ALR2d 887. We have found no case holding to the contrary except as authorized

by statute. Some states, notably New York, provide statutory authority permitting adopting parents, in very limited circumstances, to set aside adoptions. It is there held, however, that such a right does not exist in the absence of statute. *In Re Eaton*, supra.

■ It is recognized that a court of general equity jurisdiction may set aside a decree of adoption. At 2 ALR2d 890 are collected all the cases found which have considered this exercise of equity jurisdiction. It is to be carefully noted in the cases there cited that equity will assert this authority only to protect the *best interest and welfare of the child*. In this case there is no allegation that the best interests or welfare of the child Debra is at stake.

■ The plaintiffs assert that the doctrine of estoppel in pais must be applied to determine their right to prosecute this case. That doctrine is not here involved. The term estoppel is used in some of the cited cases, and in a few references the term estoppel in pais is used. However, the matter is best stated by the New York court in *In Re Martin's Adoption*, supra, wherein it is stated: "The general rule is that where a person invokes the jurisdiction of a court, he will not be heard to repudiate the judgment which that court entered upon his seeking and in his favor." This is not a matter of estoppel in the strict sense, but rather a rule of law. 19 Am Jur 600, 704, Estoppel §§ 2, 72. We conclude the plaintiffs are without right to institute and maintain this proceeding.

■ Nevertheless, this court has examined with care the allegations and evidence of fraud leveled against the Waverly Baby Home and finds them to be without merit. Certainly there is no evidence of a weight and character sufficient to support a determination that the decree of adoption was a void by reason

thereof. The record and briefs do support a belief that ill will has magnified inconclusive and inconsequential facts into assertions of gross fraud. We find no good purpose in reviewing this evidence. If there is any criticism to be made of the conduct of that organization it is one of carelessness. Neither can we condone the practice of that organization in urging that its attorney serve as the attorney for adopting parents. An attorney in such a situation should be free to examine the record and conduct of the agency without concern or favor.

Plaintiffs also contend that the adoption proceeding itself was void. To establish this they assert that the allegation of "search and inquiry" in the affidavit, upon which the court entered its order for publication of a citation to the mother in the proceedings by which Waverly was awarded a "permanent" commitment and authority to enter its consent to adoption, was insufficient for that purpose. The averments of the affidavit have been previously set forth. They ask us to hold that for this reason the juvenile department had no jurisdiction over the mother at the time the commitment order was modified and that Waverly's subsequent consent to the adoption was therefore without authority. That without a valid consent the adoption must fail. We believe that upon this ground also this appeal must fail.

Our first attention is, therefore, again directed to the proceedings and judgment by which the juvenile department first acquired and asserted jurisdiction over the child Debra and her mother. This court has, on previous occasion, considered the jurisdiction of the juvenile court with reference to such a judgment. We refer to *Palm v. Smith et al.,* supra. At page 624 of that opinion the court sets out the pertinent sections

of the statute referring to the jurisdiction of the juvenile court to enter orders of commitment. These sections are now found at ORS 419.522 and 419.526. The pertinent portions of the first section mentioned provide as follows:

> "When any child is found to be dependent or neglected, within the meaning of ORS 419.102, the court may make an order committing the child to the care of some suitable state institution, to the care of some reputable citizen of good moral character, to the care of some suitable association willing to receive it and embracing in its objects the purpose of caring or of obtaining homes for dependent or neglected children. The court may thereafter set aside, change or modify such order."

ORS 419.526 defines the terms "temporary" and "permanent" commitment to such a person or institution. As held at page 626 of *Palm v. Smith et al.*, supra: "* * * the court derives its authority to make commitments of dependent children from § 93-609 [OCLA] [ORS 419.522]," and "the court is further authorized in § 93-609 to 'set aside, change, or modify' such order. * * * We are reluctant to believe the legislature intended to deprive a juvenile court of the power to change *any order of commitment* when the welfare of the dependent child so demanded." (Italics ours.)

That case concerned the continuing *jurisdiction* of the court to modify a permanent order. However, the rule is equally applicable to this case. When notice has been served upon the parent as directed by ORS 419.506, and particularly when the parent in response to such notice appears in person, as in this case, and the child is likewise before the court, jurisdiction of parent and child is acquired. This jurisdiction continues until dissolved by order of the court or process of law. *Palm v. Smith*, supra; *Stoker v. Gowans*, 45

Utah 556, 147 P 911; *In Re Hook*, 95 Vt 476, 115 A 730, 19 ALR 610; *People v. Leonard*, 415 Ill 135, 112 NE2d 697; *Thompson v. Harrell* (Tex), 271 SW2d 724; *In Re Ramelow*, 3 Ill App2d 190, 121 NE2d 41.

■ We again refer to the original judgment entered in the dependency proceedings. As previously stated, this order included a finding of *dependency*. So long as dependency existed jurisdiction was retained. The order was *res adjudicata* as to all parties upon that one salient determination upon which jurisdiction depends until changed or modified as provided by order of law. *In Re Ramelow*, supra. Additional notice, order or proceeding could only duplicate that which was already accomplished. It would not detract from existing and effective jurisdiction.

We hope it is thus made clear that the court had the power or jurisdiction to modify or change the authority granted to Waverly to include the authority to enter its consent to adoption. Such exercise of jurisdiction did not infringe upon or alter the status existing between parent and child determined by the original adjudication finding dependency.

Thus the second attempted notice to the mother and the citation issued upon the affidavit were unnecessary to provide continuing jurisdiction of the essential parties, including the mother. When Waverly and the court, acting by its counselors, initiated a second petition and attempted to accomplish a substituted service of citation upon the mother prior to the entry of an order awarding Waverly the right to enter the adoption proceedings the parties, and the court, were undoubtedly motivated by that degree of caution which prompted the court in *Stoker v. Gowans*, supra, to indicate that the giving of notice prior to a change in the commitment order would have been a matter of

better practice, but that its failure to do so was an irregularity and did not deprive the court of jurisdiction. See also II Cooley's Constitutional Limitation 8th ed, p 861, where it is stated: "It is a general rule that irregularities in the course of judicial proceedings do not render them void. An irregularity may be defined as the failure to observe that particular course of proceeding which, conformably with the practice of the court, ought to have been observed in the case." By so stating we are not holding that an "irregularity" existed in the proceedings challenged by this appeal. We are merely stating that such is the most that can be contended for, and if irregularity should exist, it does not void the jurisdiction of the court.

■ It must be noted that we have not considered the sufficiency of the affidavit, heretofore mentioned, to sustain the publication of citation to the mother on the occasion of the second hearing. Our disposition of this case renders this unnecessary. The extent, if any, to which the natural mother was by that process deprived of due process is not before us and cannot be determined. Let it be clear, however, that at the time the juvenile department entered the order authorizing Waverly to consent to an adoption proceeding it had jurisdiction of the subject matter and all the necessary parties. If there were any failure of due process it is available only to the mother and not to these plaintiffs. As succintly stated by the editors of Am Jur at 14 Am Jur 364, Courts § 161: "Jurisdiction does not relate to the right of the parties between each other, but to the power of the court." Due process requires "Notice that some particular judicial proceedings are already instituted or proposed to be instituted, and of the time and place where such hearings are to be had, and reasonable opportunity to be heard, * * *." II Cooley's Constitutional Limitations 8th ed, p 851.

Plaintiffs rely upon *Furgeson v. Jones*, 17 Or 204, 20 P 842, and subsequent decisions of this court which conform to the rule of that case. These cases hold that in an adoption proceeding the court considering the adoption does not acquire jurisdiction unless some form of notice has been served, directly or substituted, upon the competent, living natural parents. The distinction between that line of cases and this should be clear. We are not here concerned with the jurisdiction obtained by the court in the adoption proceedings. We must and do rely upon the jurisdiction obtained and retained by the juvenile department at the time of the initial dependency proceedings. As heretofore discussed we are satisfied as to that. Having determined that such jurisdiction was acquired, it is decisive of the remaining issues.

Affirmed.

ROSSMAN, J., specially concurring.

I concur in the opinion written by Mr. Justice SLOAN. I add the following as additional reasons.

The plaintiffs argue that the mother of the child (Debra) was an indispensable party to the proceeding which the Waverly Baby Home instituted October 20, 1953, pursuant to ORS 419.526 and 419.538, whereby it sought authority to consent to Debra's adoption. They contend that the service of citation upon the mother was defective and that, therefore, the court never acquired jurisdiction over the adoption proceeding. Having advanced those contentions, they claim that everything that occurred since the proceeding was instituted is void.

Neither of the child's natural parents is a party to this suit. The only parties to the latter, which seeks to invalidate the adoption, are the adopting parents,

who are the plaintiffs, together with the Waverly Baby Home and Debra as defendants. If the mother was a necessary party to the proceeding which was filed October 20, 1953, then, for exactly the same reason, she is a necessary party to this suit. In fact, there are even stronger reasons for demanding that she should have been made a party to this suit than that given by the plaintiffs in support of their contention that she should have been served with citation in the proceeding instituted October 20, 1953. I will presently develop those reasons.

In adoption proceedings, the child's status is the subject matter of the proceeding. 1 Am Jur, Adoption of Children, p 652, § 53. Its relationship to its natural parents and to the individuals who desire to become its adopting parents will be changed completely by the adoptive order when entered.

This suit seeks to declare void the adoption order and thereupon exclude from the plaintiffs' home and family this unfortunate little girl. If a decree of that kind is entered, the plaintiffs, who are now the adoptive parents, will become strangers to the child and owe her no duty. They will no longer be responsible for her and can no longer be required to support her. Upon the entry of an order of that kind, she could not inherit from either of her adoptive parents if a death occurred. If the plaintiffs have other children, her relationship to them presumably would be terminated, although they are not parties to this suit.

Now, let us consider the effect upon the natural parents if this prayed-for decree must be entered. The proceeding which was instituted July 27, 1951, and which separated Debra from her natural parents (1 Am Jur, Adoption of Children, p 650, § 51) is not attacked in this proceeding. As has also been stated,

the natural parents are not parties to this suit. Surely the natural parents, unless they are dumb-driven cattle, have an interest in this little girl and in the family in which she will be reared. So far as we know, they are satisfied with present arrangements.

If a decree must be entered for the plaintiffs, two possibilities will present themselves. First, it could be held that since the order which was entered in the proceeding instituted July 27, 1951, is not under attack, and since the natural parents are not parties to this proceeding, they would not be bound by the outcome of this suit and thereupon Debra would have lost, not only her adoptive parents, but also her natural parents. Thus, an eight-year-old girl would be cast adrift in the world without home or parents. Surely no court in a civilized land would reach a conclusion of that kind. The other alternative would be to hold that the natural parents, upon the entry of a decree favorable to the plaintiffs, would again owe to Debra all the obligations of parenthood. But they are not parties to this suit. If, notwithstanding the fact that they are not parties to this suit, the entry of a decree favorable to the plaintiffs will restore them to their former status; then, if they have a home, they will be required to accept the little girl into it. They will again become responsible, not only for her discipline, but also for her support and upbringing. In the event of death she could inherit from them. The very mention of those facts shows that the natural parents are necessary parties to this suit. In fact, no just decree can be entered in the absence of the natural parents.

Debra has a brother whom the plaintiffs have also adopted. The two were the subjects of both of the proceedings mentioned in Mr. Justice SLOAN's opinion. The brother meets with the plaintiffs' entire satisfac-

tion and they wish to retain him. Yet the order which they seek to have declared void, upon a contention that the Juvenile Court lacked jurisdiction, mentions that child to exactly the same extent as it does Debra. If the order which was made in the proceeding instituted October 20, 1953, is void as to Debra because of an alleged lack of jurisdiction on the part of the court, it is equally void as to the brother. Surely that child should have been made a party to this suit.

This being an equity proceeding, it is tried de novo in this court. In the absence of the natural parents, we cannot proceed and must dismiss. According to 39 Am Jur, Parties, p 975, § 104:

"In some classes of cases, as in equity * * * the nonjoinder of necessary parties is at no time waived, but may be taken advantage of at any time, and indeed in some instances cannot be waived, as was held in the case of a petition for a mandamus in which, if granted, the rights of a person not a party would have been materially affected. When the defect or omission is one that is beyond the reach of an amendment, the objection may be taken at any time."

As long ago as 1891, Mr. Justice Robert BEAN, in *Beasley v. Shively*, 20 Or 508, 26 P 846, declared:

"* * * A court may determine any controversy between the parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but where a complete determination of the controversy cannot be had without the presence of other parties, it may dismiss the complaint or cause them to be brought in, as the exigencies of the case may require. (Hill's Code, § 41; Russell v. Clark's Ex. 7 Cranch, 69; Young v. Cushing, 4 Biss. 456). The better practice in the circuit court is to order the necessary parties to be brought in, and that should always be done under

ordinary circumstances. But we have no such authority, and could only in a proper case, and where the equities justify, remand the cause to the court below for that purpose. While the record before us discloses the fact that there are other parties whose rights will be materially affected by a decree in this case, their name or names nowhere appear in this record, and we do not feel authorized to remand this case to the court below for the purpose of having them made parties."

I concur in Mr. Justice SLOAN's opinion and offer the above as additional support.

LUSK, J., specially concurring.

In *Furgeson v. Jones*, 17 Or 204, 20 P 842, 11 Am St Rep 808, 3 LRA 620, this court held that a decree of adoption, entered without notice to the father of the adopted child and without the father's consent, was void and open to collateral attack. The mother had given her consent. In a contest over the right to inherit upon the death of one of the adoptive parents, his widow (who had joined with her husband in the petition for adoption) and who had acquired the interest in certain real property of the presumptive heir of the deceased parent, prevailed over the claim of the adopted child. The contention that the widow was estopped because she and her deceased husband had procured the decree to be entered was rejected because the consent of both parents was a jurisdictional requirement, and "such a decree cannot bind or estop any one and may be collaterally assailed, whenever and wherever it may be interposed in any action." 17 Or at 220. This case has been cited by this court many times, and the rule it enunciates has never been questioned, and is, I take it, the law of this state today, though it has been criticized by textwriters (see 1 Am

Jur 642, Adoption of Children § 40), and has met with apparent disapproval in a number of other jurisdictions: *Magevney v. Karsch*, 167 Tenn 32, 65 SW2d 562, 92 ALR 343; *Child Saving Institute v. Knobel*, 327 Mo 609, 37 SW2d 920, 76 ALR 1068; *Re Reichel*, 148 Minn 433, 182 NW 517, 16 ALR 1016; *Appeal of Wolf*, 10 Sadler (Pa) 139, 13 A 760; annotation, 16 ALR 1030 et seq.

We are not faced, however, with the question decided in Furgeson. The issue here is whether the plaintiffs, the adoptive parents, may collaterally attack the judgment of the juvenile court which terminated the parental rights of the mother of the chlid, Debra, on the ground that no notice of the proceeding or opportunity to be heard upon that question was given Debra's mother.

I think that the affidavit in support of the order of publication of citation directed to the mother was insufficient for failure to state facts showing that due diligence was used to find her. [1]

I am further of the opinion that the mother was entitled to notice of the proceedings. The statute contains no express provision upon that subject. An implication that notice is required may, perhaps, be drawn from ORS 419.514, which relates to the method of obtaining jurisdiction of nonresident or unknown parents and of parents not found in the state by publication or personal service of citation outside the state. The section concludes:

> "* * * In case a parent so served fails to answer such citation and the child is adjudged dependent and a temporary commitment is made, such

---

[1] The only facts stated in the affidavit are that registered letters were mailed to the mother at two addresses, one in Astoria the other in Portland, and returned to the writer with the notations "Not Known."

commitment may be modified or made permanent without further notice to the parent so served and failing to answer."

There is no such provision with reference to parents personally served within the state.

When a temporary commitment is made "guardianship of the person of the child remains with the court and a child under such an order may be recalled by the court for further action at any time." ORS 419.-526 (2). A permanent commitment bears with it "guardianship of the person of such child" ORS 419.526 (3). An association or individual who has thus acquired the status of guardian under that statute "may be made party to any proceeding for the legal adoption of the child, and may appear in any court where such proceedings are pending and assent to such adoption. Such assent is sufficient to authorize the court to enter the proper order or decree of adoption." ORS 419.538. These express provisions negative any implication that parental rights are terminated by a temporary commitment. It is only an order of permanent commitment which has that effect and results in dispensing with the necessity of securing the parents' consent to an adoption. This, as I understand it, is the view of counsel for the defendants and is apparently the construction which has been placed upon the act by the juvenile court itself. It is the view taken by Mr. Justice ROSSMAN more than 30 years ago when he was a circuit judge for Multnomah County.[2] Any uncertainty upon the question which may have previously existed has been removed by the enactment of ORS 109.316 (Oregon Laws 1957, ch 710 § 4), which provides that a child-caring agency may consent to the adoption of a child who has been *permanently* committed to it by a court of competent juris-

---

[2] George Rossman, *Parens Patriae*, 4 Or L Rev 233, 242.

diction, and that where such consent is given no other consent is required. That section does not govern this case, having been enacted after the proceeding here involved, but it was evidently adopted for the purpose of removing possible ambiguities in the statute.

Thus the temporary order of commitment was not a final adjudication terminating the mother's parental rights. That could not be accomplished without "further action" (ORS 419.526), and that action could not be validly taken without adequate notice to the child's mother.

A parent's right to the custody and control of his children is protected by the Fourteenth Amendment. "The child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Pierce v. Society of Sisters of Holy Names*, 268 US 510, 535, 69 L ed 1070, 45 S Ct 571, 39 ALR 468. See, also, *Meyer v. Nebraska*, 262 US 390, 67 L ed 1042, 43 S Ct 625, 29 ALR 1446.

To hold that a parent may be deprived by a court of so sacred a right without notice and an opportunity to be heard "is opposed to the principles which lie at the foundation of all judicial systems not essentially despotic in their character and methods of procedure." *Schiltz v. Roenitz*, 86 Wis 31, 56 NW 194, 21 LRA 483, 39 Am St Rep 873. See, also, 1 Am Jur 645, Adoption of Children § 44; *Jain v. Priest*, 30 Ida 273, 164 P 364; *Ex Parte Martin*, 29 Ida 716, 161 P 573; 4 Or L Rev, supra, Note 2, at pp 248-254. Or, as stated in *Magevney v. Karsch*, supra, since the legislature has provided for proceedings in courts of record "it must be presumed that the Legislature intended that such proceedings would be in accordance with the usual practice

of such courts" requiring notice as an element of due process. See, also, *In re Knott*, 138 Tenn 349, 197 SW 1097.

The fact that the court is granted continuing jurisdiction to "set aside, change or modify" its original order (ORS 419.522) does not excuse the failure to give notice of the proceeding looking towards a permanent commitment. Divorce courts, after a decree of divorce has been entered, have continuing jurisdiction for the purpose of modifying orders with respect to alimony and the support and custody of minors. But the courts hold that the modification of a divorce decree, made without notice to the party whose rights are adversely affected by the order, will, when challenged by such party, be treated as a violation of procedural due process and therefore void: *Ex Parte Saunders*, 17 Cal App2d 635, 637, 173 P2d 818; *Moore v. Superior Court*, 203 Cal 238, 241-242, 263 P 1009. A similar decision is *Griffin v. Griffin*, 327 US 220, 90 L ed 635, 66 S Ct 556, in which the question was upon the validity of a judgment for arrearages of alimony entered without notice to the defendant.

But the fact that the mother was entitled to notice of the proceedings and did not receive it, does not decide this case. She is not here complaining of the court's action, and, for all that appears, is entirely satisfied with the existing situation. The actual question is whether the plaintiffs will be heard to assert an abridgement of the mother's constitutional rights. Under general principles, I think that they will not. 11 Am Jur 748, Constitutional Law § 111. In the sense explained in *Moore v. Superior Court*, supra, the court retained the same jurisdiction over the parties and the subject matter that it had prior to the entry of the order of dependency and the making of a temporary

commitment.[3] But the court could not "arbitrarily or ex parte," to use the language of that case, enter an order of permanent commitment of the child divesting the mother of her parental rights *which would bind her.* As to her such an order is void, but she alone can challenge it. Thus, the case is not like *Furgeson v. Jones,* supra, which rests upon the principle that, where a court is exercising a special authority not known to the common law, failure to comply with a statutory requisite made essential to jurisdiction attaching renders the decree of the court a nullity.

I agree that the evidence of fraud is insufficient. As to whether judicial cognizance should be taken of the particular charges of fraud made by the plaintiffs here, see, 1 Am Jur 672, Adoption of Children § 72.

I concur in the result.

WARNER, J., dissenting.

The primary reason for my dissent is because I feel that the course pursued by the attaches of the Waverly Baby Home in the Allen adoption and proceedings preliminary thereto were not consonant with the traditional standards of excellence usually associated with that worthy institution. Predicated on the record before us, I am persuaded that the negligence of the Waverly Baby Home is in fact a fraud perpetrated upon the plaintiffs.

---

[3] "The language of section 138 of the Civil Code is read into every decree of divorce which purports to deal with the care, custody, and support of the minor children of the parties to the action, and, this being so, whatever orders or decrees the trial court may make or enter in the premises are not in the nature of final judgments which determine the relation of the parties to each other, or to the action or to the subject-matter over which the court has thus retained all of the jurisdiction which it had during every stage of the proceedings and pendency of such action. In the foregoing sense the trial court retained, under said section of the Civil Code, so read into its orders and decrees, the same jurisdiction over the parties and the subject matter to which said section relates that it had and exercised prior to the making and entry of either its interlocutory or its final decree in said action. The petitioner herein has referred us to no authority which is opposed to this conclusion, and we are satisfied that no such authority exists." 203 Cal at 241, 242.