ANNE W. TUCKER & others *vs.* JASPER L. FISK.

Middlesex. January 26, 27, 1891. — November 11, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Adoption — Fraud — Probate Court — Appeal — Next of Kin — Laches — Practice — Amendment.*

An appeal lies, under the Pub. Sts. c. 156, § 6, from a decision of the Probate Court dismissing a petition to revoke a decree of adoption on the ground of fraud practised on the court.

The next of kin of an adopting parent, who but for the adoption would be his heirs at law, may petition the Probate Court to annul the decree of adoption on the ground of fraud.

Laches will not be imputed to non-resident next of kin of an adopting parent, who, upon discovering after such parent's death that the decree of adoption was procured by the fraud of the adopted child, petitioned the Probate Court within a few months thereafter to revoke the decree, in the absence of anything to put them upon the inquiry earlier, or to show that the delay has operated to such child's prejudice.

A petition to the Probate Court to annul a decree of adoption, brought by the next of kin of the adopting parent, who but for the adoption would be his heirs at law, alleged that the adopting parent, being at the time of unsound mind and under the undue influence of the respondent, was induced by means of such unsoundness and the undue influence and fraud of the respondent to apply for the respondent's adoption, and to concur in the proceedings ; that these facts were suppressed by the respondent and concealed from the court; and that the decree was procured by means of the fraud thus practised upon the court. *Held*, that the petition, upon the addition of an averment that such parent left property, but no valid will, would state a case calling for the interposition of the court.

PETITION, filed on February 18, 1890, to the Probate Court, to revoke a decree of adoption. The case was heard in this court, on an appeal taken by the petitioners, before *Holmes*, J., who reported the case for the consideration of the full court. The facts appear in the opinion.

The case was argued at the bar in January, 1891, and afterwards, in September following, was submitted on the briefs to all the judges.

*J. L. Thorndike*, (*W. S. Otis* with him,) for the petitioners.

*G. L. Mayberry*, for the respondent.

MORTON, J. This was a petition to the Probate Court of Middlesex County, by the heirs at law and next of kin of Eliza Jane Fisk, late of Waltham, to revoke and annul a decree of adoption made upon the petition of said Eliza in 1884, and assented to by the adopted person, the respondent, in which it was decreed that the respondent should thenceforward be the child to all legal intents and purposes of the petitioner, and that his name should be changed from Jasper Paine Blake to Jasper Leon Fisk. The grounds alleged in the petition were, that at the time of said alleged adoption the said Eliza was of unsound mind; that she was induced to present and concur in said petition by means of fraud and undue influence practised upon and exercised over her by the defendant; and that these facts were fraudulently concealed by him from the court. After hearing, the petition was dismissed in the Probate Court, because the allegations did not appear to be sustained. An appeal was taken to this court, and the case comes here on the question whether the ruling of the justice who heard it, that no appeal lay from the Probate Court, and that, if it did, the petition disclosed no cause of action or *locus standi* on the part of the petitioners, was correct.

There would seem to be nothing in the nature of a decree of adoption to take away the power of the Probate Court to revoke and annul it, on the ground that it had been procured by fraud practised upon the court. It is said generally in *Waters* v. *Stickney*, 12 Allen, 115, that it is impossible to deny the power of the Probate Court " to correct errors arising out of fraud or mistake in its own decrees "; and the same thing is held in substance in *Gale* v. *Nickerson*, 144 Mass. 415. There is nothing in the stat-

utes which places a decree of adoption on any different footing in this respect from that of other judgments and decrees of that court. The respondent does .not indeed contend that the Probate Court has not the power to annul for fraud a decree of adoption, like any other decree or judgment. But he insists that there is no appeal from the refusal of the Probate Court to revoke the decree of adoption in this case. The language of the statute relating to appeals from the Probate Court is very broad, and is as follows: " A person aggrieved by an order, sentence, decree, or denial of a Probate Court or of a judge of such court may, except in cases otherwise provided for, appeal therefrom to the Supreme Judicial Court." Pub. Sts. c. 156, § 6. There is nowhere any provision taking away the right of appeal from a decree of the Probate Court denying a petition to vacate and annul one of its judgments on the ground of fraud. In *Gale* v. *Nickerson, ubi supra,* which was a case where there was an appeal from the refusal of the Probate Court to reopen a decree allowing the will of John Nickerson, on the ground that it had been obtained by fraud, not only did the right to appeal pass without question, so far as the reported case shows, but it was expressly upheld by this court. We see nothing in the nature of a decree of adoption which should deprive parties on the one side or the other of the right to appeal from the dismissal or allowance by the Probate Court of a petition to reopen and annul it on the ground of fraud.

The respondent further insists that the petitioners have no standing in court, and no right to be heard. It is true that the next of kin of Eliza Jane Fisk could not have appealed from the decree of adoption during her lifetime. The only way in which they could have attacked it would have been to procure the appointment of a guardian, who could have taken an appeal or other proceedings in her name. Whether, in case they had petitioned for the appointment of a guardian, and the Probate Court had refused to appoint one, that would have been conclusive upon them in any subsequent proceedings, we do not now consider. The petitioners lived out of the State at the time when the adoption proceedings were instituted, and do still so reside, and were entirely ignorant, till after the death of said Eliza, of her condition and of the facts attending the adoption.

If they cannot now be heard, there would seem to be no way in which the adoption proceedings, however fraudulent, can be reached, and the death of Eliza will have operated to clothe the respondent's fraud with immunity from attack. We do not think her death can have that result. But for the alleged adoption, the petitioners, who were the next of kin of Eliza, would have been her heirs at law. If the adoption proceedings should turn out for any reason to be invalid, they will be entitled to her estate as her heirs at law. They have, therefore, a direct pecuniary interest in the matter, like disinherited heirs in proceedings concerning their ancestor's will, or heirs whose ancestor was fraudulently induced to make a conveyance of real estate. *Holman* v. *Loynes,* 4 DeG., M. & G. 270. *Gresley* v. *Mousley,* 4 DeG. & J. 78. Kerr on Fraud and Mistake, 371.

No law required that any notice should be given to them before the decree of adoption was passed. They were not parties to the proceeding, had no opportunity to be heard, did not live in this State, and are not concluded by the decree. *Adams* v. *Adams, ante,* 290.

While the primary result of adoption is, like marriage, to create a different relationship and status as to the parties immediately concerned from that which existed between them before, it may also indirectly affect, then or afterwards, the rights and interests of others; and on principle there would seem to be just as much reason that parties interested should be allowed to contest the validity of a decree of adoption, as that they should be allowed to contest the validity of a divorce and a subsequent marriage by one of the divorced parties. *Adams* v. *Adams, ante,* 290. We are unable to perceive any sound distinction between the two cases.

The respondent further objects, that, even if the said Eliza was of unsound mind at the time of the adoption proceedings, the validity of the decree is not thereby affected, because a judgment against an insane person is neither void nor voidable. If we assume that to be so, the answer is that the case proceeds, not on the ground that the decree is to be avoided by reason of the unsoundness of mind of Eliza, but on the ground that by means of that unsoundness, and of the undue influence which he was thereby enabled to gain over her, and his suppression of

these and other facts, the respondent was enabled to perpetrate, and did perpetrate, a fraud upon the court, which resulted in a decree of adoption which would not otherwise have been made. It is not a case where, with the facts all before it, the court came to a wrong conclusion, but a case in which by means of the fraudulent conduct and undue influence which the respondent exercised over Eliza, and which he concealed from the court, he procured the entry of the decree in controversy. *Edson* v. *Edson*, 108 Mass. 590.

The only question remaining is as to the sufficiency of the petition. It is stated upon the petitioners' brief, and not denied by the respondent, that Eliza died possessed of a large amount of real and personal estate, which she attempted to dispose of by a will which the petitioners claim to be invalid on the grounds of incapacity and undue influence. The petition contains no averments relating to these matters, as it should, but since it can be readily amended, we have considered it as if it contained sufficient allegations concerning them. The petition, as amended, sets out that said Eliza was, at the time of the alleged adoption, of unsound mind and under the undue influence of the respondent, and was induced by means of this unsoundness of mind and the undue influence and fraud of the respondent to present said petition for adoption, and concur in the proceedings; that none of these facts were made to appear to the Probate Court, but were concealed from it by the respondent; and that the decree was procured by means of the fraud thus practised upon the court. We think, taking into account the nature of the case, this sufficiently sets out that the decree was procured by the respondent by means of a fraud practised by him upon the court and upon said Eliza, and states a case calling for the interposition of the court. See *Brooke* v. *Mostyn*, 2 DeG., J. & S. 373.

We see no ground on which it can be justly claimed that the petitioners have been guilty of laches. Eliza Jane Fisk died on October 10, 1889, and the petitioners did not discover till after her death her condition at the time of the decree of adoption, or the facts concerning the respondent's conduct in relation to it. Till then there was nothing to put them upon an inquiry. Their petition was filed in February, 1890, only a few months

after the death of Eliza. We do not think that, living out of the State as they did, they can be guilty of laches, in the absence of anything to put them upon an inquiry, in not discovering the facts between the time of the alleged adoption and her death. Besides, it does not appear that the delay has operated to the respondent's prejudice. *Pope* v. *Salamanca Oil & Refining Co.* 115 Mass. 286. *Morse* v. *Hill,* 136 Mass. 60. *Nudd* v. *Powers,* 136 Mass. 273. *Gresley* v. *Mousley,* 4 DeG. & J. 78.

For these reasons, a majority of the court are of opinion that, if the petitioners elect to amend their petition by adding in substance an averment that the said Eliza left property and left no valid will disposing of the same, then, according to the terms of the report, the case is to stand for hearing on the evidence; otherwise, the petition is to be                    *Dismissed.*