128 Ind. App. 688 (1958)
151 N.E.2d 150
COUNTY DEPARTMENT OF PUBLIC WELFARE OF ST. JOSEPH COUNTY ET AL.
v.
MORNINGSTAR ET AL.
No. 18,948.
Court of Appeals of Indiana.
Filed June 13, 1958.
Rehearing denied August 1, 1958.
Transfer denied September 30, 1958.
*689 Donald Patrick, Isadore D. Rosenfeld and Norman Kopec, all of South Bend, for appellants.
Samuel Schulman, of South Bend and F.L. Wiltrout, of Elkhart, for appellees.
ROYSE, J.
Appellees brought this action to set aside and annul a judgment of adoption on the ground the Department of Public Welfare of St. Joseph County made fraudulent misrepresentations to induce them to procure the adoption. (Hereinafter appellant County Board of Welfare will be referred to as the Board, and the appellant Shirley Anne DeSmith (Morningstar) as the child.)
The second amended complaint upon which this case was tried averred, in substance: That the Department represented to appellees that it maintained a competent staff of trained workers and personnel and that it rated the children it had for adoption as to their social, moral, spiritual, physical and mental standards, and placed them with persons desiring to adopt children who had similar and comparable standards; that said Board further falsely represented to them that the child was of good health mentally and physically. It alleged the father was immoral and irresponsible; that the mother, at the time the aforesaid representations were made, was living an immoral and promiscuous life; that she *690 had given birth out of wedlock to a negro child; that an older sister of said child, about twenty-four years of age, was feeble-minded; that the Board knew these facts prior to and at the time of the adoption; that the appellees relied upon the representations made by the Board and did not learn of these conditions until after said adoption; that if they had known the true conditions they would not have adopted her.
Appellants filed answer in two paragraphs, the first of admission and denial under the rules; the second alleging appellees were guilty of laches. At the same time the Board filed a petition to have the child made a ward of the Court.
The trial court found for appellees and by its judgment ordered the adoption set aside and made the child a ward of the Board and placed her in the custody of the Children's Aid Society.
We proceed to a consideration of the questions properly presented by the brief of appellants. They first contend that the court erred in hearing evidence and conducting a trial before the Board and the Guardian ad litem were made parties and were represented. No action was pending when the evidence was heard as a suit is not commenced until the process is regularly delivered to the officer for service. In answer to this contention appellees say appellants made no effort to have the complained of testimony stricken. Instead, they took a chance on a favorable decision, and try to raise the question now by a motion for new trial. In order to understand the basis of this contention we set out the chronological record of this case:
On October 2, 1953 appellees filed their original petition or complaint to annul the adoption.
On February 1, 1954, the trial court ordered written notice in lieu of summons to the Board. This notice was placed in the hands of the sheriff and was served *691 by him on February 17, 1954, but for some reason was served on appellees instead of the Board.
On June 10, 1954 the court made the following entry:
"Comes now the petitioners in court and with their attorney David Matthews.
"And now hearing is had on the petition to annul adoption.
"And now hearing on the petition is ordered continued to June 22, 1954 and the Clerk is ordered to issue summons upon the St. Joseph County Department of Public Welfare returnable June 22, 1954 at 10:00 A.M."
Thereafter on June 23, 1954 the Board filed its demurrer to the original petition. At that time the record discloses the following proceedings:
"Mr. Patrick: Department of Public Welfare files demurrer to petition for Annulment of Adoption.
"Mr. Matthews: Petitioners object to the Defendant, Department of Public Welfare, filing a demurrer on the grounds the Court has already heard evidence. The issues have already been closed.
"Mr. Patrick: I have a right to make a filing at this time. In fact I am waiving any ten day period in which to make a filing. I am filing in advance of time. This is the first time we have been made a Defendant in this cause and prior to this time I had no status in this case."
The demurrer of the Board was filed and sustained by the trial court, and the child was made a temporary ward of the Board.
Appellees, on November 29, 1954, filed "amended verified petition for annulment of adoption" and summons was ordered issued to Shirley Anne Morningstar and alias summons to the Board.
On December 13, 1954 a Guardian ad litem was appointed for the minor appellant.
On January 13, 1955 the Board filed another demurrer, *692 and appellees thereupon filed their second amended verified petition for annulment of adoption.
On March 10, 1955 the appellants filed their answer, to which appellees addressed a reply. On the same date, March 10, 1955, the following entry appears:
"And now petition for Annulment of Adoption is submitted to the court, and evidence for the petitioners is begun."
It seems clear to us on the record before us that this case was tried on appellees' second amended complaint and the answers of appellants thereto. The court records clearly show that on issues formed thereby the cause was submitted to the trial court on March 10, 1955, at which time the record states "evidence for the petitioners is begun."
The foregoing record is set out in the briefs of appellants and its verity is in no manner questioned by them. In our opinion the record herein shows the trial of this cause began March 10, 1955. Furthermore, as heretofore set out, the record affirmatively shows appellants knew at the time they filed their demurrer to the original complaint that the court had heard some evidence while that complaint was pending. At that time they took no steps to have such evidence stricken from the record, nor did they make any complaint to the trial court about such evidence during the trial of this case. Only after the court had announced its decision and judgment did they make objection in their motion for a new trial to such evidence. It is well settled that a party may not sit by and let prejudicial or improper evidence be admitted without objection or motion and then when an adverse judgment is rendered against him complain that he was harmed by the admission of such evidence. Falvey v. Jackson et al. (1892), 132 Ind. 176, 31 N.E. 531; The Cleveland, Columbus, Cincinnati and Indianapolis Railway *693 Company v. Wynant (1893), 134 Ind. 681, 694, 34 N.E. 569; Epperson v. State (1937), 211 Ind. 237, 6 N.E.2d 538; Watts v. State (1950), 229 Ind. 80, 112, 95 N.E.2d 570. If there was error in hearing such evidence appellants have waived it.
Appellants next contend the decision of the court was contrary to law and not sustained by sufficient evidence. They recognize the rule that this court will not weigh the evidence but they contend "there is not a single bit of evidence supporting the findings or decision of the court." They then say "fraud is not to be presumed and all elements of the falsity of the reliance and materiality must be proved by clear and convincing evidence." Appellees say the evidence in this case clearly establishes that the representations the Board were charged with having made about the child and its family were made by the Board and relied upon by appellees, and that the Board knew such representations were false.
The determination of this question requires a consideration of the evidence most favorable to appellees. The condensed recital of evidence takes up 836 pages in three volumes of appellants' brief. For that reason, and because of the sordid, immoral and repulsive nature of this evidence, we will here summarize the facts which we believe it establishes.
There is evidence in the record that some time prior to the adoption, a Mr. Pettit, who was then Secretary of the Board, in response to their question about the heritage of the child, told the appellees:
"I cannot tell, we cannot divulge that but I will say that we have a Board of five members, a medical psychiatric psychological sociological and spiritual advisers that maintain the status of these children socially, morally, mentally, physically and spiritually and see that we place them in the home of the same social standards as the home they come from." *694 Another investigator of the Board told both appellees the child's father held a responsible position in Washington, D.C.
The records of the Board show that after their investigation of appellees and their home, which included quotes from their pastor, neighbors, business associates, family physician and others, it made the following report to the court at the time of the adoption:
"This entire family seems well established, emotionally mature and understanding and willing to cooperate as a unit to make the placement effective and have given the situation the attitude of give and take which they evidently have to all problems involved in the family.
"They are warm and affectionate without too much emotional display and place their thinking on the child rather than themselves.
"They are broad in their religious views and unrestrictive in their recreational activities and would not expect too much of a child in the home. They are financially stable.
"The home has a pleasant live-in appearance and although the housekeeping standards are good, it is easily seen that it is not restrictive kind of housekeeping standards.
"This home seems to have a great deal to offer a child."
Another report indicated at the time the Board placed the child in the home of appellees for boarding she was a retarded child and it was thought possible she was feeble-minded.
The record herein shows that the child was a ward of the Board and placed in care of the Children's Aid Society a few days after her birth. As heretofore indicated, she was a retarded child and thought to be feeble-minded. Prior to the time she went into the home of appellees the Children's Aid Society reported she had developed the habit of masturbation. She entered the home of appellees shortly after her third birthday. She was unusually reticent, could not walk *695 well and did not seem to have an appetite. The reports of the Board and the evidence of appellees is that in a few months she responded favorably to the kind and loving treatment of appellees. She began to show affection for the appellees and their grandchild, enjoyed playing with toys, walked and talked better. She was started in kindergarten when about five years old. She did not progress well there. She would go into violent tantrums and engaged in serious sex abnormalities. Appellees took her to several doctors and clinics.
The record discloses the Board had information that the father was a very immoral man and had committed incest with his daughters, the older sisters of the child herein. It is undisputed that the Board knew the mother (a white woman) gave birth at different times to an illegitimate negro and white child; that for more than eight years prior to events which led up to this action she had lived a life of sexual promiscuity. They had information another older sister of the child had lived an immoral life for several years before she was killed in an automobile accident. One older sister was feeble-minded. It is undisputed that the Board had information of all these facts prior to the time they placed this child with the appellees. It is also undisputed that appellees would not have adopted this child if they had known the true facts. They relied upon the representations of the Board as to the character of the child's natural parents and family.
We believe the foregoing is an accurate summation of the evidence necessary to a determination of the question of fact presented by this appeal.
In our opinion the evidence clearly establishes that the Board perpetrated a tragic fraud on the appellees and the Probate Court of St. Joseph County in recommending the adoption of the child. That Board knew from its own investigation that the *696 appellees were God-fearing people of good morals and excellent citizens. Yet, when those good people, actuated by the best of humanitarian motives, wanted to take a child into their home and inquired about the family story, etc., of the child the Board wanted to put into their home, it, in effect, told them this child came from a family of the same character as the appellees. When it made these representations it knew from its own records complied by its own specially trained assistants, based on interviews with the mother and sisters of the child and medical reports from physicians of its own choosing, that the child was mentally retarded and thought to be feeble-minded; that the father, mother and older sisters were immoral and depraved. This court will not stultify its judicial conscience by condoning such dishonest conduct of a public welfare agency.
Finally, appellants contend the trial court erred in admitting in evidence over their objections Exhibits 6 through 15. They contend these exhibits were not public records but were only daily reports of various employees of the Board and are shown to be hearsay and are confidential and not public records. Appellees contend appellants have waived this point because they have not complied with Rule 2-17 (e) in that in the argument portion of their brief they did not specify which specific grounds of the motion for a new trial are intended to be urged. While there is some technical merit to appellees' contention, we are able to understand the objection of appellants and therefore hold they have made at least a good-faith effort to comply with the rules.
Appellees state, if the question has been presented, "these files contain numerous reports made by case-workers of the Department and reports of various *697 medical and other examinations which the Department had made. These files were kept as the official records of the Department, kept in the scope of its duties. The Department is required by statute to keep records. Burns' Stat., 52-1260. However, appellants do not rely upon the theory that these are public records which are prima facie proof of the facts stated therein.
This evidence was competent to prove the Department's knowledge of the falsity of its representations at the time of making them and to dispel any idea that they were honestly made.
As stated in 20 Am. Jur., Evidence, § 1049, p. 888:
"The rule is well settled that for certain purposes reports made by an agent of employee to his employer, if such report is required of the employee or is made in the line of his duty, are admissible in evidence to prove a fact in issue. It has been held in some cases that such reports are competent both to affect the employer with notice of, and to establish against him, relevant facts and existing conditions leading up to the cause of action. In other cases it has been determined that such reports must be limited to the purpose of proving notice to the employer of relevant facts and existing conditions leading up to the cause of action which is the source of the instant litigation."
We are of the opinion these exhibits were properly admitted to show what information the Board had prior to the time it made such false misrepresentations. This case was tried to the Court and there is nothing in the record to indicate the trial court considered them for any other purpose. In our opinion there is no merit to appellants' contention that these exhibits were considered for improper purposes because the trial court granted appellees' petition to amend its second verified amended complaint to conform to the evidence.
Finally, in this, as in all cases affecting the lives of children, the primary concern of the courts is the welfare *698 of the child. There is medical evidence in the record that this child should be treated in a closed psychiatric unit. Certainly this can be efficiently accomplished under the order of court placing her in the care of the Children's Aid Society.
Judgment affirmed.
Pfaff, C.J.  Not participating.
NOTE.  Reported in 151 N.E.2d 150.