JOHN ROE *et al.*, Plaintiffs-Appellants, v. CATHOLIC CHARITIES OF THE DIOCESE OF SPRINGFIELD, ILLINOIS, d/b/a Catholic Charities of Alton-Wood River, Defendant-Appellee.

Fifth District   No. 5—89—0411

Opinion filed February 14, 1992.—Rehearing denied March 31, 1992.

HOWERTON, J., concurring in part and dissenting in part.

Wiseman, Shaikewitz, McGivern, Wahl, Flavin & Hesi, P.C., of Alton, for appellants.

Lisa K. Franke and James W. McConkey, both of Burroughs, Simpson, Hepler, Broom & MacDonald, of Edwardsville, for appellee.

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs John Roe, Mary Roe, Jane Roe (by her father and next friend, John Roe), Betty Doe, Billy Doe (by his mother and next friend, Betty Doe), and Carol Boe appeal from an order of the circuit court of Madison County granting the motion to dismiss pursuant to section 2—619(a) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)) of defendant, Catholic Charities of the Diocese of Springfield, Illinois, d/b/a Catholic Charities of Alton-Wood River. In this cause, plaintiffs question whether an adopting parent and an adopted child may state a cause of action against an adoption agency for information regarding the child's health, condition and need for future treatment. We affirm in part and reverse and remand in part.

Although defendant brings up several factual arguments, a motion to dismiss admits all well-pleaded facts of the complaint. (*Long v. City of New Boston* (1982), 91 Ill. 2d 456, 463, 440 N.E.2d 625, 628; *Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187, 380 N.E.2d 790, 794.) We will therefore take the pleaded facts as true and not address defendant's factual arguments.

Plaintiffs John and Mary Roe, Betty Doe and Carol Boe (hereafter referred to as adoptive parents) separately approached defendant in 1978 and the early 1980's seeking to adopt a "normal, healthy" child. Defendant placed a child in each family's home as a foster child with the potential for future adoption. The adoptive parents stated to defendant that they would only choose to adopt a child if (1) all the child needed was lots of love, (2) the child was normal both physically and mentally, (3) defendant would tell them all it knew about their particular child's background, and (4) they would incur no unusual or extraordinary expense. Defendant, through its agents and employees, made statements to the adoptive parents that their particular child was a normal child who only needed lots of love. Defendant indicated that each child was normal in its physical and mental condition as well as level of development for a child of similar chronological age and that the adoptive parents would incur no unusual or extraordinary medical expense for the child's care and treatment. Defendant further indicated that it had no information concerning the children's background.

While making these statements, however, defendant knew that Jane Roe had seen psychiatrists, psychologists and other mental health professionals for violent and uncontrollable behavior as well as intellectual, social and emotional retardation. Defendant knew that Billy Doe had severe instances of abnormal behavior such as smearing feces on the interior walls of past foster homes and had exhibited other uncontrollable behavior in those homes as well. Defendant also knew that Joe Boe displayed destructive behavior in past foster homes such as stomping the family's dog to death. Defendant further knew that Joe Boe received extensive psychiatric counseling and suffered from emotional and social retardation.

The adoptive parents each relied on the representations of defendant and adopted a child. Since then, each child continued its destructive and violent behavior. One child cut the whiskers off the family cat and flattened his mother's tires. Another child painted a neighbor's house and exposed himself to neighbors. The other child had severe episodes of violent behavior requiring the aid of professional counseling. The adoptive parents have incurred extraordinary expenses for treatment of these disturbed children and expect to continue incurring these expenses into the future.

In March 1988, the adoptive parents obtained a court order to review defendant's file on their children as a result of medical problems. The grant of that order is not appealed here. Upon review of the files, each parent discovered the falsity of defendant's statements.

The adoptive parents brought suit based on fraud, breach of contract and negligence. They also brought suit for fraud and negligence on behalf of two of the children. The third child, Joe Boe, was institutionalized and no cause is brought on his behalf. On June 16, 1989, the circuit court of Madison County granted defendant's motion and dismissed the cause with prejudice.

Plaintiffs' first issue on appeal is whether Illinois recognizes a cause of action for fraud based upon an adoption agency's intentional misrepresentation of a child's health and psychological background. They argue that they have alleged each element of a cause of action for fraud and that public policy supports the application of common law fraud to the adoption setting. Defendant responds that since adoption is strictly a creature of statute, this court must only apply statutory law to the case. At the time of the adoptions, defendant had no statutory obligation to disclose such information. They further argue that the recognition of a cause of action for fraud in the adoption setting would force agencies to guarantee that adopted children will mature into happy and healthy children.

The circuit court stated:

> "Court finds that Illinois does not recognize a cause of action for malpractice in adoption and grants defendant's motion pursuant to Ill. Civil Practice Act section 2—619(a)."

We recognize that cause of action for fraud today.

Recognition of this cause of action is not a dramatic, radical departure from the well-established common law of the State of Illinois. It is rather an extension of the doctrine of common law fraud. This is how the common law traditionally grows; it responds to the needs of the society it serves.

Our research indicates this is a case of first impression in Illinois. Ohio, California and Indiana, however, have recently dealt with similar issues. *Michael J. v. County of Los Angeles, Department of Adoptions* (1988), 201 Cal. App. 3d 859, 247 Cal. Rptr. 504; *Burr v. Board of County Commissioners* (1986), 23 Ohio St. 3d 69, 491 N.E.2d 1101; *County Department of Public Welfare v. Morningstar* (1958), 128 Ind. App. 688, 151 N.E.2d 150; see also Annot., 56 A.L.R.4th 357 (1987).

In *Burr*, the plaintiffs adopted an infant in 1964. At that time, the agency informed the Burrs that the child was the son of an unwed mother who was living with her parents. They were told that the mother was trying to take care of the child and work during the day, that the grandparents were mean to the child, and that the mother was going to Texas to seek better employment and voluntarily surrendered the child for adoption. The agency represented to the Burrs

that the child "was a nice big, healthy, baby boy" who was born at a particular hospital. 23 Ohio St. 3d at 70, 491 N.E.2d at 1103.

The child in fact suffered many physical and mental problems. He had a speech impediment, twitched, and had poor motor skills and learning disabilities. His school classified him as "educable, mentally retarded." Eventually, he was diagnosed as having Huntington's disease. In 1982, during treatment, the Burrs obtained a court order opening the sealed records concerning the child's background. They then learned for the first time that the representations made by the agency were false. (23 Ohio St. 3d at 71, 491 N.E.2d at 1103-04.) The natural mother was actually a 31-year-old mental patient at a State hospital, and the father was assumed to be one of the patients. The baby was born at that State mental hospital and not at the city hospital indicated. The mother was diagnosed as having a "mild mental deficiency, idiopathic, with psychotic reactions" and shared the child's speech impediment and low intellectual level. The "mean" grandparents, trip to Texas and voluntary placement were all false. Before the Burrs adopted him, the child had been in two foster homes. According to the court, seemingly all information about the child, other than his age and sex, was a fabrication. (23 Ohio St. 3d at 71, 491 N.E.2d at 1104.) The Ohio Supreme Court held:

> "It would be a travesty of justice and a distortion of the truth to conclude that deceitful placement of this infant, known by appellants to be at risk, was not actionable when the tragic but hidden realities of the child's infirmities came to light." 23 Ohio St. 3d at 75, 491 N.E.2d at 1107.

In *Michael J. v. County of Los Angeles, Department of Adoptions* (1988), 201 Cal. App. 3d 859, 247 Cal. Rptr. 504, the California Court of Appeal recognized a similar cause of action. Here, the child in question had a port-wine stain, a manifestation of Sturge-Weber syndrome, on his upper torso and face. Although the adoptive mother saw the stain, the agency concealed from her the fact that it was a manifestation of the disease. She indicated that had she known, she would not have adopted the child. (201 Cal. App. 3d at 864, 247 Cal. Rptr. at 505.) The court held:

> "As keepers of the conscience of the community, we cannot countenance conduct which would allow persons who desire entrance into the emotional realm of parenting to be unprotected from schemes or tactics designed to discharge societal burdens onto the unsuspecting or unwary. As trustees of the child's destiny the agency was obligated to act with morals greater than

those found in a purveyor's common marketplace." 201 Cal. App. 3d at 875, 247 Cal. Rptr. at 513.

*County Department of Public Welfare v. Morningstar* (1958), 128 Ind. App. 688, 151 N.E.2d 150, predates both of the other cases by approximately 30 years. There, the appellate court of Indiana affirmed the trial court order setting aside an adoption based on fraud by the County Department of Public Welfare. The board represented to the adoptive parents that it had rated the child as to its social, moral, spiritual, physical and mental standards and placed it with parents meeting comparable standards. The child, however, was not in good health mentally or physically. The child was mentally retarded, had violent tantrums, and engaged in "serious sex abnormalities." The board knew this prior to the adoption and yet made false representations to the adoptive parents. In fact, the board knew that the child's natural father committed incest with the child. The parents relied on the representations of the board to their detriment, and had they known the truth, they would not have adopted the child. The court held that it could not condone such dishonest conduct by a public agency and set aside the adoption. 128 Ind. App. at 689-96, 151 N.E.2d at 152-55.

Other States have also recognized a cause of action for fraud in the adoption setting. In *In re Lisa Diane G.* (R.I. 1988), 537 A.2d 131, 133, the supreme court of Rhode Island held that the family court has jurisdiction to decide whether to vacate an adoption order based on a claim of fraud or misrepresentation. (537 A.2d at 133.) In *Allen v. Allen* (1958), 214 Or. 664, 330 P.2d 151, the supreme court of Oregon held the evidence was insufficient in weight or character to support a determination that a decree of adoption was void by reason of fraud. (214 Or. at 672-73, 330 P.2d at 155.) The supreme court of Minnesota held that if a party can demonstrate that an adoption decree was fraudulently obtained, he should be entitled to relief. (*In re Welfare of Alle* (1975), 304 Minn. 254, 258-59, 230 N.W.2d 574, 577.) The supreme judicial court of Massachusetts held that the probate court may annul an adoption decree based on fraud, even after death. (*Tucker v. Fisk* (1891), 154 Mass. 574, 28 N.E. 1051; see also *McKay v. Kean* (1897), 167 Mass. 524, 46 N.E. 120.) The supreme judicial court of Massachusetts later held that if a person dominates his wife to such an extent that it amounts to "undue influence" and he thereby forces her to bring a petition for adoption of his son, he commits a "gross fraud" upon both her and the court. In such a case, the decree of adoption should be set aside (*Phillips v. Chase* (1909), 203 Mass. 556, 560, 89 N.E. 1049, 1051-52), for "[t]he law will not allow a

man to profit by his own wrongdoing." 203 Mass. at 565, 89 N.E. at 1052.

■ The Illinois Supreme Court outlined the elements of a cause of action for fraudulent misrepresentation, often referred to as fraud, in *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 402 N.E.2d 599. To show a cause of action in fraud, one must show (1) a false statement of material fact, (2) known or believed to be false by the party making it, (3) intent to induce the other party to act, (4) action by the other party in reliance on the truth of the statement, and (5) damage to the other party resulting from such reliance. (79 Ill. 2d at 286, 402 N.E.2d at 601; see also *Smith v. Kurtzman* (1988), 176 Ill. App. 3d 840, 846, 531 N.E.2d 885, 889; *Cotter v. Parrish* (1988), 166 Ill. App. 3d 836, 841, 520 N.E.2d 1172, 1175.) The party must be justified in his reliance; he must have a right to rely. *Soules,* 79 Ill. 2d 282, 402 N.E.2d 599; *Smith,* 176 Ill. App. 3d 840, 531 N.E.2d 885.

■ According to the second amended complaint, (1) defendant made various false statements of material fact to plaintiffs. These include statements that: the children were normal; all they needed was lots of love; defendant had no background information about the children; the children would be normal in that they were in normal physical and mental condition and at a normal level of development for someone of the children's chronological age; and the parents would incur no unusual or extraordinary expense for the care and treatment of the children. The second amended complaint alleges that the statements are false and that (2) defendant knew them to be false when made. Plaintiffs allege that (3) defendant made the statements with intent to deceive and induce them to adopt the children, *i.e.,* act. The complaint further alleges that (4) the parents, relying on these statements, did act and that these statements were material in that had plaintiffs known the truth, they would not have adopted. Finally, the complaint alleges that (5) plaintiffs were damaged as a result of the misrepresentations and fraud. Plaintiffs have alleged the necessary elements of a fraud cause of action.

■ Defendant argues that adoption is strictly a creature of statute, and, therefore, all proceedings pertaining to adoption are controlled by statute. In determining what duty exists, if any, defendant argues that the court must look only to legislation. At the time of the adoption, Illinois had a statute protecting the confidentiality of adoption records, section 18 of the Adoption Act (Act) (Ill. Rev. Stat. 1981, ch. 40, par. 1522). According to defendant, disclosure of any such information was against public policy as evidenced by section 18.

It is true that adoptions are creatures of statute. As such, if this were a case dealing with who may adopt a child, who may be adopted, whether the placement complied with the law, or any of a number of other subjects addressed by the Act (Ill. Rev. Stat. 1987, ch. 40, par. 1501 *et seq.*), all proceedings would be controlled by that Act. This is not such a case, however. Corporations are also creatures of statute. (Ill. Rev. Stat. 1987, ch. 32, par. 1.01 *et seq.*) The Business Corporation Act of 1983 (Ill. Rev. Stat. 1987, ch. 32, par. 1.01 *et seq.*) states that a corporation may sue and be sued in its corporate name. (Ill. Rev. Stat. 1987, ch. 32, par. 3.10(b).) Private adoption agencies, and agencies of not-for-profit corporations in particular, are bound by all of the law of the State of Illinois—both statutes and common law. The courts of this State have long held that a corporation may be sued for the common law torts it commits. One need look no further than the negligence actions against such corporations as airlines, railroads, automobile manufacturers and hospitals for examples.

Defendant is also incorrect in its assertion that disclosure of the requested information would have violated public policy evidenced by section 18 of the Act. (Ill. Rev. Stat. 1987, ch. 40, par. 1522.) That section has not changed since the 1982 adoption. It has, however, been supplemented by sections 18.1 through 18.6 (Ill. Rev. Stat. 1987, ch. 40, pars. 1522.1 through 1522.6), which require the disclosure of such information. We can see no conflict between the confidentiality requirement and the disclosure amendments, and apparently neither could the legislature.

Defendant cites *Petrowsky v. Family Service of Decatur, Inc.* (1987), 165 Ill. App. 3d 32, 518 N.E.2d 664, for the proposition that adoption agency malpractice is not a recognized cause of action in Illinois. *Petrowsky* involved an adoption agency's alleged shoddy investigation and paper work. The Fourth District Appellate Court found no precedent or policy favoring recognition of the tort of adoption agency malpractice. 165 Ill. App. 3d at 35, 518 N.E.2d at 665-66.

This case is distinguishable. Professional malpractice is a species of negligence, not fraud. However, not every tort committed by a professional rises to the level of malpractice. (See, *e.g., Owens v. Manor Health Care Corp.* (1987), 159 Ill. App. 3d 684, 512 N.E.2d 820 (nursing home was negligent, but not engaged in a "healing art" with respect to the particular patient when act occurred); *Lyon v. Hasbro Industries, Inc.* (1987), 156 Ill. App. 3d 649, 509 N.E.2d 702 (defendant committed acts of both negligence and malpractice: malpractice in not properly exercising adequate judgment or skill in supplying the ambulance, negligence in maintaining its vehicles).) If a physician commit-

ted fraud in billing a patient, she would be liable for committing fraud, not malpractice. When the *Petrowsky* court discussed "adoption agency malpractice," it was discussing negligence in the investigation of the child's history. That is not the issue in the case at bar.

Defendants fear that recognition of a cause of action for fraud in the adoption setting will force agencies to guarantee that the adopted children will mature into happy and healthy children. In *Richard P. v. Vista Del Mar Child Care Service* (1980), 106 Cal. App. 3d 860, 165 Cal. Rptr. 370, the California Court of Appeal, noting that the plaintiff alleged no facts which indicated that the agency's statements were false (106 Cal. App. 3d at 865, 165 Cal. Rptr. at 372-73), expressed a similar fear. (106 Cal. App. 3d at 867, 165 Cal. Rptr. at 374.) A later California Court of Appeal, in *Michael J. v. County of Los Angeles, Department of Adoptions* (1988), 201 Cal. App. 3d 859, 247 Cal. Rptr. 504, also held that agencies cannot be made guarantors of the future health of a child. Nevertheless, *Michael J.* recognized a cause of action for fraudulent misrepresentation in the adoption setting in California. (201 Cal. App. 3d at 875, 247 Cal. Rptr. at 513.) As the supreme court of Ohio noted, "[s]uch matters [of the future health] are solely in the hands of a higher authority." (*Burr v. Board of Commissioners* (1986), 23 Ohio St. 3d 69, 77-78, 491 N.E.2d 1101, 1109.) We join with these learned courts and require no guarantee of the future health and happiness of the adopted children. To do so would place an unbearable burden upon adoption agencies. We merely require adoption agencies to follow the law. Although at the time of the adoptions there was no statute requiring disclosure, the agency was prohibited from committing fraud.

Defendant argues that such recognition will hinder its efforts to place handicapped children with families. We believe that a policy of truth and straightforward dealing, rather than fraud, will actually help in the placing of handicapped children in appropriate homes. It requires a person of special strength and strong values to adopt a handicapped child. This person will go into the adoption with eyes open, presumably emotionally and financially able to support a handicapped child. These parents will be prepared to accept the children as they are. In addition, if the adoptive parents know of any potential problems with a child, they can see to it that the child receives appropriate treatment as soon as possible. Early detection and treatment may lead to a greater chance of cure or effective treatment. The children deserve the opportunity for early treatment. Here, as in *Burr*, the adoptive parents spent a great deal of time and money duplicating diagnostic work already accomplished. The parents went to doctors to

discover problems already known to the agency. These children could have received proper treatment at a much earlier time.

Defendant further argues that if this court recognizes a cause of action for fraud, adoption agencies will not want to place emotionally or physically handicapped children for fear that an unforeseen problem will arise. As stated above, however, we hold that agencies are not the guarantors of the future health and happiness of adoptive children. Agencies should not fear such placements. Under law, an agency may not make a false statement of material fact it knows or believes to be false. Neither are agencies guarantors of the truthfulness of the natural parent's statement of background. The agency cannot control the information given by the natural parents. It can only offer the information it has and believes to be true.

■ Defendant next argues that punitive damages sought in the complaint are inappropriate. We note that the First District Appellate Court in *Beaton & Associates, Ltd. v. Joslyn Manufacturing & Supply Co.* (1987), 159 Ill. App. 3d 834, 512 N.E.2d 1286, held that punitive damages are only allowed:

> "[W]hen a wrongful act is accompanied by aggravated circumstances, including fraud, willfulness, wantonness, or malice. Courts award punitive damages to punish a defendant, teaching him not to repeat his intentional, deliberate and outrageous conduct, and to deter others from similar conduct. [Citation.] Further, the decision to award damages is left to the trier of fact ***." 159 Ill. App. 3d at 846, 512 N.E.2d at 1293.

■ Finally, defendant asserts that the second amended complaint is insufficient in that plaintiffs did not plead particular facts. Defendant also asserts that the term "normal, healthy" in the complaint is ambiguous. "A pleader is not required to set out his evidence, but need only plead ultimate facts to be proved." (*Borgsmiller v. Burroughs* (1989), 187 Ill. App. 3d 1, 7, 542 N.E.2d 1281, 1286, citing *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308, 430 N.E.2d 1005, 1009.) In light of the surrounding circumstances and the relationship between the parties, a "normal, healthy" child is unambiguous. The second amended complaint has been sufficiently pleaded on both points noted above.

The circuit court dismissed the complaint in its entirety, stating that Illinois does not recognize a cause of action for malpractice in adoption. The circuit court was most likely relying on *Petrowsky*, cited by defendant for this proposition. In fact, the Fourth District Appellate Court remanded two counts but declined to impose an additional contractual duty to investigate the child's paternity. (*Petrowsky*,

165 Ill. App. 3d at 38, 518 N.E.2d at 668.) By our decision today, we do not impose such a duty either.

## NEGLIGENCE

Plaintiffs' next issue on appeal is whether an adoption agency breaches a duty of care when it fails to disclose necessary medical and psychological information to adoptive parents. Plaintiffs specifically argue that the adoption agency-adoptive parent relationship of trust and confidence is fiduciary in nature and therefore requires good faith and complete disclosure. Defendants argue that Illinois does not recognize such a cause of action.

■■ Illinois has long recognized a cause of action for negligent misrepresentation. The elements of the negligent misrepresentation cause of action include a duty owed by defendant to plaintiffs, a breach of that duty, and injury proximately resulting from such breach. (*Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 163, 510 N.E.2d 409, 415; *Lyons v. Christ Episcopal Church* (1979), 71 Ill. App. 3d 257, 259, 389 N.E.2d 623, 625.) The duty owed in a negligent misrepresentation situation is exactly the same as that owed in a fraudulent misrepresentation situation. (*Zimmerman*, 156 Ill. App. 3d at 163, 510 N.E.2d at 415.) In addition, it is entirely appropriate for a plaintiff to allege counts of both intentional and negligent misrepresentation. (*Tan v. Boyke* (1987), 156 Ill. App. 3d 49, 508 N.E.2d 390.) As *Zimmerman* noted, the misrepresentations may result from failing to provide adequate information when there is a duty to do so, as well as providing information which is false.

Defendant cites *Petrowsky v. Family Service of Decatur, Inc.* (1987), 165 Ill. App. 3d 32, 518 N.E.2d 664, for the proposition that adoption agency malpractice is not a recognized cause of action in the State of Illinois. *Petrowsky* involved an adoption agency's alleged shoddy investigation and paperwork. The Fourth District Appellate Court found no precedent or policy favoring recognition of the tort of adoption agency malpractice. (165 Ill. App. 3d at 35, 518 N.E.2d at 665-66.) The earlier case of *Martino v. Family Service Agency* (1982), 112 Ill. App. 3d 593, 445 N.E.2d 6, also a fourth district opinion, declined to recognize the tort of social worker malpractice, noting that the court considered there was no precedent or policy in the State of Illinois compelling recognition of that cause of action. The court in *Petrowsky* cited *Martino* with approval and declined to recognize a tort action.

Subsequent to the *Martino* decision, but prior to *Petrowsky*, the Second District Appellate Court in *Horak v. Biris* (1985), 130 Ill. App. 3d 140, 474 N.E.2d 13 (see Annot., 58 A.L.R.4th 965 (1987)), considered and declined to follow *Martino* and specifically recognized a cause of action for social worker malpractice. The *Horak* court extensively discussed *Martino* as follows:

"In dismissing the counts in question, the circuit court noted that although it was bound by the Fourth District's opinion in *Martino v. Family Service Agency* (1982), 112 Ill. App. 3d 593, 445 N.E.2d 6 (see *People v. Collings* (1981), 95 Ill. App. 3d 325, 329, 420 N.E.2d 203), it disagreed with the reasoning of that case. We have reviewed the *Martino* decision and agree with the circuit court that the tort of social worker malpractice should be recognized under the facts presented here.

In *Martino v. Family Service Agency* (1982), 112 Ill. App. 3d 593, 445 N.E.2d 6, the plaintiff, Janet Martino, filed a five-count complaint against the Family Service Agency of Adams County (Family Service) and Jane Balke, the chief executive officer of Family Service, essentially alleging that plaintiff and her husband sought and received marital counseling services from Family Service, that defendant Balke was assigned to and did counsel plaintiff, and that during this period Balke: (a) used against plaintiff's interest information obtained by Balke from plaintiff during counseling, (b) revealed those confidences to others, (c) fell in love with plaintiff's husband, pursued him, and engaged in 'intimate relations' with him, and (d) after developing this conflict of interest failed to either inform plaintiff of the conflict or terminate her counseling relationship with plaintiff. (112 Ill. App. 3d 593, 594-95, 445 N.E.2d 6.) Respecting her malpractice claim, Mrs. Martino argued that the situation was analogous to the medical profession, where a breach of duty has been held to arise from a psychiatrist's having intercourse with his patient as part of her prescribed therapy (*Roy v. Hartogs* (1976), 85 Misc. 2d 891, 381 N.Y.S.2d 587), and a hospital's negligent failure to abide by licensing regulations (*Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253). Plaintiff also urged the court to consider the code of ethics adopted by the National Association of Social Workers, which would have been violated by defendant Balke's conduct.

While noting that there was an inference arising from numerous authorities that the tort of malpractice is applicable to

one engaged in the profession of social work, the *Martino* court nevertheless was unwilling to recognize such a tort, 'at least when it arises from conduct not intended to harm.' (112 Ill. App. 3d 593, 597, 445 N.E.2d 6.) The court stated:

'Although the conduct alleged here was clearly improper, determination of the propriety of conduct of social workers and the relationship it might have to injury suffered by clients generally would be most difficult to ascertain. The damages a client might receive from the improper practice of social work are unlikely to be pecuniary in nature and extremely unlikely to be physical in nature.' (112 Ill. App. 3d 593, 597, 445 N.E.2d 6.)

The court then concluded that in the absence of Illinois precedence there was 'no compelling policy reason to initiate the recognition of the tort of social worker malpractice for unintended "hurts" most of which we deem likely to be "slight hurts which are the price of a complex society." ' 112 Ill. App. 3d 593, 597, 445 N.E.2d 6, quoting *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 85, 174 N.E.2d 157, 164.

Contrary to the reasoning set forth in the *Martino* decision, we believe that the facts alleged and admitted in the instant case are sufficient to establish a cause of action for social worker malpractice. 'Malpractice' is defined in Black's Law Dictionary 1111 (rev. 4th ed. 1968), as '[a]ny professional misconduct, unreasonable lack of skill or fidelity in professional or fiduciary duties, evil practice, or illegal or immoral conduct.' The elements necessary to establish a malpractice action are the same elements required of any negligence case. (See, *e.g., Borowski v. Von Solbrig* (1973), 14 Ill. App. 3d 672, 677, 303 N.E.2d 146.) Thus, plaintiff must plead: (1) that defendant owed him a duty, (2) that defendant failed to perform or breached that duty, (3) that the breach was the proximate cause of plaintiff's injuries, and (4) damages. (14 Ill. App. 3d 672, 677, 303 N.E.2d 146.) Whether a duty exists is a question of law to be determined by the court, but whether the duty is properly performed by defendant is a fact question to be decided by the trier of fact. (*Johnson v. Hoover Water Well Service [Inc.]* (1982), 108 Ill. App. 3d 994, 1003, 439 N.E.2d 1284.) A person's duty to act with reasonable care does not extend to the world at large, but, rather, is defined and limited by various considerations such as the relation between the parties, the gravity and foreseeability of the harm, the utility of the chal-

lenged conduct and the burden of guarding against the injury. *Orrico v. Beverly Bank* (1982), 109 Ill. App. 3d 102, 105-06, 440 N.E.2d 253.

We believe the facts alleged in the instant case, if proved, sufficiently establish a duty owed by defendant Biris to plaintiff Horak and a subsequent breach of that duty by defendant. It was alleged that plaintiff went to defendant's office, at defendant's request, to receive counseling and guidance in his personal and marital relationships, ostensibly for the purpose of improving those relationships. Defendant held himself out as a social worker licensed by the State to render such assistance and insight. His license placed him in a position of trust, the violation of which would constitute a breach of the fiduciary relationship. Such a breach has been held on several occasions to be an actionable and independent tort. (See *Allabastro v. Cummins* (1980), 90 Ill. App. 3d 394, 399, 413 N.E.2d 86; *Glass v. Burkett* (1978), 64 Ill. App. 3d 676, 381 N.E.2d 821; but see *Martino v. Family Service Agency* (1982), 112 Ill. App. 3d 593, 596, 445 N.E.2d 6, suggesting that a breach of fiduciary relationship is not an actionable tort.) Further, we think that the very nature of the therapist-patient relationship, which was alleged and admitted here, gives rise to a clear duty on the therapist's part to engage only in activity or conduct which is calculated to improve the patient's mental or emotional well-being, and to refrain from any activity or conduct which carries with it a foreseeable and unreasonable risk of mental or emotional harm to the patient." *Horak v. Biris*, 130 Ill. App. 3d at 143-45, 474 N.E.2d at 16-17.

Our supreme court in *Corgan v. Muehling* (1991), 143 Ill. 2d 296, 574 N.E.2d 602, found that the plaintiff stated a cause of action for negligence arising from a psychologist's engaging in sexual relations with a patient. The court in *Corgan* cited *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387, which stated:

"A complaint for negligence, to be legally sufficient, must set out facts that establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. (*Teter v. Clemens* (1986), 112 Ill. 2d 252, 256[, 492 N.E.2d 1340]; *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 162[, 456 N.E.2d 116].) The determination of whether a duty exists—whether the defendant and the plaintiff stood in such a relationship to one another that the

law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff—is an issue of law to be determined by the court. *Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 440[, 484 N.E.2d 1088]; *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 18-19[, 440 N.E.2d 96]; *Cunis v. Brennan* (1974), 56 Ill. 2d 372[, 308 N.E.2d 617].

This court has held that 'the existence of a legal duty is not to be bottomed on the factor of foreseeability alone,' but on whether the harm reasonably was foreseeable. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375[, 308 N.E.2d 617, 618] (the defendant municipality owed no duty to the plaintiff, who was injured when he was thrown 30 feet upon the collision with a third person's automobile and impaled his leg on a drain pipe left in the defendant's public parkway); see also *Feldscher v. E & B, Inc.* (1983), 95 Ill. 2d 360, 368-69[, 447 N.E.2d 1331]; *Palsgraf v. Long Island R.R. Co.* (1928), 248 N.Y. 339, 342-43, 162 N.E. 99, 100; 3 F. Harper, F. James & O. Gray, The Law of Torts sec. 18.2, at 664 (2d ed. 1986).) This standard of reasonable foreseeability governs the foreseeability of injury from the defendant's conduct to the plaintiff, who would be the passenger here in the patient's car.

Although the reasonable foreseeability of injury is a key concern in determining whether a duty exists, it is not the only consideration. The question of duty in a negligence action should take into account the likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant. (*Lance v. Senior* (1967), 36 Ill. 2d 516, 518[, 224 N.E.2d 231, 233]; *Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 99[, 306 N.E.2d 39, 41-42]; see also *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 388-89[, 493 N.E.2d 1022, 1026-27]; *Resag v. Washington National Insurance Co.* (1980), 90 Ill. App. 3d 971, 974[, 414 N.E.2d 107, 109]; *Van Skike v. Zussman* (1974), 22 Ill. App. 3d 1039, 1042[, 318 N.E.2d 244].)" (117 Ill. 2d at 525-26, 513 N.E.2d at 395-96.)

The court then cited *Horak* favorably as follows:

"The essential question is whether the plaintiff properly alleged negligence on the part of the defendant. This court has held:

'A complaint for negligence, to be legally sufficient, must set out facts that establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an

injury proximately caused by that breach. [Citations.] The determination of whether a duty exists—whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff—is an issue of law to be determined by the court.' (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387.)

In determining whether to impose a duty upon a defendant, a court will look at various policy considerations, such as the likelihood of harm, the gravity of the injury, the burden of guarding against the injury, and the relationship between the parties. See *Horak v. Biris* (1985), 130 Ill. App. 3d 140, 145[, 474 N.E.2d 13]." *Corgan v. Muehling*, 143 Ill. 2d at 306, 574 N.E.2d at 493.

The First District Appellate Court in *Wogelius v. Dallas* (1987), 152 Ill. App. 3d 614, 504 N.E.2d 791, noted *Horak* recognized a cause of action for social worker malpractice. The *Wogelius* court stated that to establish this action, a plaintiff must plead a duty owed to plaintiff by defendant, its breach as the proximate cause of plaintiff's injuries, and damages. 152 Ill. App. 3d at 622, 504 N.E.2d at 796.

Neither of the parties has cited to this court a fifth district case determining whether we should follow the *Martino-Petrowsky* line of reasoning or that enunciated in *Horak*. Our court in *Midamerica Trust Co. v. Moffatt* (1987), 158 Ill. App. 3d 372, 511 N.E.2d 964, considered an action brought against a caseworker with the Illinois Department of Children and Family Services seeking damages for injuries sustained by minor children while under the supervision of the Department. *Moffatt* cited both *Martino* and *Horak* in stating: "We note that the existence of a social worker's duty to his or her client is not settled in this State." (158 Ill. App. 3d at 378, 511 N.E.2d at 968.) Analyzing *Horak*, we decided that it was inapplicable to the situation in *Moffatt*.

After analyzing the approach of the fourth district in *Martino* and *Petrowsky* and comparing it with the analysis in *Horak*, and *Horak* as cited and applied by our supreme court in *Corgan*, we choose to follow the position of the Second District Appellate Court in *Horak* and recognize that one can allege a cause of action grounded in negligence against an adoption agency. We determine that the negligence allegations as pleaded in this cause are generic to negligence and are sufficient to state a cause of action. We specifically disagree with the *Petrowsky* court in determining that there is no compelling

authority or public policy of Illinois which would lead to a recognition of the tort of adoption agency negligence. The reasoning of the court in *Horak* is applicable to the instant situation. We find specifically that a duty was owed to plaintiffs by defendant, in this particular instance the duty of an honest and complete response to plaintiffs' specific request concerning the characteristics of the potentially adoptable child; that defendant breached that duty in its failure to supply plaintiffs with the information defendant possessed and had available; and that as a direct and proximate result of that breach, damages were sustained as alleged by plaintiffs.

We also hold today that, in light of the criteria for establishing duty that our supreme court stated in *Kirk*, the question of duty should be resolved affirmatively. This result simply applies accepted tort principles to the adopting parent-adoption agency relationship. In the instant case we conclude that the harm was reasonably foreseeable in that one can reasonably foresee adverse consequences to placing an infant with medical and psychological problems, especially when the adopting parents are not forewarned about the existence of those problems. Given the severity of the problems in this case and the reasonably foreseeable problems that a sick or disturbed child can cause in a family unit, emotionally, physically and financially, we determine that the instant case meets the *Kirk* criteria, especially when taking into account the likelihood of injury. The magnitude of the burden on defendant of guarding against the situation alleged is slight; it involves merely an honest and complete answer to the question posed by plaintiffs. Since defendant adoption agency is the only one of these parties with the information concerning the infants' physical and psychological health, the burden can be placed on no other party. The consequence of placing that burden on defendant is defendant discloses what information it has in response to an adopting parent's inquiry, so that adoptive parents assume the awesome responsibility of raising a child with their eyes wide open. We further view the consequences of placing the burden of disclosure upon defendant when, as in this situation, the adoptive parents ask for this information, to include a party's being answerable for the consequences of their own acts or omissions, a principle basic to our system of justice. Since informed adults would be assuming the responsibility of raising an adopted child, a favorable consequence of imposing this burden would be the encouragement, preservation and strengthening of basic family units in our society, a policy of the State of Illinois which is enunciated in the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 102(2)).

Given the above-discussed factors, we today recognize the tort of adoption agency negligence and hold that plaintiffs in this cause have adequately pleaded a cause of action sounding in that tort.

## BREACH OF CONTRACT

Plaintiffs' final issue on appeal is whether they have sufficiently alleged a cause of action for breach of an oral contract. Plaintiffs specifically argue that as they have alleged the necessary elements of a cause of action, this court must decide whether to accord the same remedies to the adoption agency-adoptive parents contract as those accorded common consumer or commercial contracts. Defendant responds that Illinois does not recognize a breach of contract action in the adoption setting, and plaintiffs have failed to allege the necessary elements of a breach of contract action.

As the First District Appellate Court stated in *Latex Glove Co. v. Gruen* (1986), 146 Ill. App. 3d 868, 497 N.E.2d 466:

"A complaint which sets forth a cause of action for breach of contract must allege facts sufficient to indicate offer, acceptance and consideration. [Citation.] In addition to the existence of a contract, the complaint must allege plaintiff's performance of all contractual conditions, the facts of defendant's alleged breach, and the existence of damages as a consequence thereof." 146 Ill. App. 3d at 873, 497 N.E.2d at 469.

We have extensively reviewed the allegations constituting plaintiffs' breach of contract counts (counts III, VIII and XII). While these counts are labeled as contractual, we conclude that the actions they allege and the relief prayed for essentially sound in tort rather than contract. The majority of the allegations are tortious in nature, and the allegations and relief prayed for fail to specify consequential damages from the breach of contract. Without reaching the issue defendant urges, whether one can file a breach of contract action in this adoption setting, we conclude that plaintiffs have not pleaded a cause of action for breach of contract.

## THE CHILDREN'S CAUSES OF ACTION

In essence, all four counts on behalf of the adopted children allege that had defendant not made fraudulent misrepresentations, their problems would have been dealt with by defendant rather than their respective adoptive parents, and that the adopted children have thereby suffered injury. After consideration of these counts, including taking the allegations as well-pleaded and therefore true, we determine that they fail to state a cause of action accruing to these named

plaintiffs, the children, with identifiable injury in either fraud or negligence.

On the basis stated above, we therefore affirm the circuit court of Madison County's dismissal of the following counts: counts III, VIII and XII (contract), and counts II, V, VII and X (counts filed on behalf of the adopted children). We reverse the order of the circuit court of Madison County dismissing the following counts and remand for further proceedings consistent with this opinion: counts I, VI and XI (fraud); counts IV, IX and XIII (negligence).

Affirmed in part, reversed and remanded in part.

LEWIS, J., concurs.

JUSTICE HOWERTON, concurring in part and dissenting in part:

I agree with the majority that there is a cause of action for fraud, in this case.

I must dissent, however, from the majority's opinion that there is a cause of action for negligence in this case. I believe that there is no tort for adoption agency malpractice. *Petrowsky v. Family Service of Decatur, Inc.* (1987), 165 Ill. App. 3d 32, 518 N.E.2d 664.

I further do not believe that there can be a cause of action for breach of contract.