**Mary Anne MacMATH, et al.**

v.

**MAINE ADOPTION PLACEMENT
SERVICES.**

Supreme Judicial Court of Maine.

Argued Oct. 6, 1993.

Decided Dec. 21, 1993.

Christopher C. Taintor (orally), Norman, Hanson & DeTroy, Portland, for plaintiffs.

James B. Haddow (orally), Petruccelli & Martin, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

COLLINS, Justice.

Mary Anne and Robert MacMath appeal from an order of the Superior Court (Cumberland County, *Perkins, J.*) dismissing several counts, and an order of the court (*Fritzsche, J.*) entering a summary judgment on the one remaining count, in their complaint against the Maine Adoption Placement Services ("MAPS") for breach of a duty to disclose information regarding the adoption of their son Alex. We agree with the court's conclusion that MAPS breached no duty it owed to the MacMaths and therefore we affirm the judgment.

In 1986 Mary Anne and Robert MacMath, both in their late thirties and parents of one biological son, contacted MAPS to begin the process necessary for adopting an infant. After participating in MAPS's application process, which included providing confidential information and submitting to an extensive home study, the MacMaths were approved as adoptive parents. During the application process, the MacMaths informed MAPS that they were not interested in adopting a handicapped or special needs child, and that they specifically did not want to adopt a baby who had been exposed to drug use.

In early July 1987 MAPS informed the MacMaths that a male infant was available for adoption. The baby had been born in Florida and was in the custody of Chosen Children, an adoption agency in that state which had an agreement with MAPS to place children out of state. The MacMaths flew to Florida and picked up the baby, whom they named Alex. The adoption agreement provided that MAPS would supervise the family during the first few months of the placement to ensure that the adoption was going smoothly.

During the first few months of his life, Alex's health was generally good, although he did have a "reflux," or constant spitting up, problem. By March 1988, however, Mary Anne became concerned that Alex's development was not proceeding at a normal pace. She insisted that the family pediatrician refer Alex to specialists. After several months of extensive testing, Alex was tentatively diagnosed as having cerebral palsy or static encephalopathy.

During the time that Alex was undergoing those tests, the MacMaths attempted to obtain information regarding his biological background and the circumstances of his birth to assist in the diagnosis. They contacted MAPS, which in turn contacted Chosen Children, in an effort to learn what they could from the birth mother. From this record it is obvious that what little information there was regarding Alex's birth and the birth mother's prenatal care was sketchy and subject to differing interpretations.[1] In any event, whatever information the MacMaths were able to gain was of little help in forming a diagnosis.

There are conflicts in the record with regard to MAPS's awareness of Alex's health problems and whether the agency advised the MacMaths either (1) to delay the finalization of the adoption until Alex's medical problems were better understood, or (2) that if they finalized the adoption, they would not qualify for possible government subsidies for the adoption of special needs children.[2] The MacMaths aver that no such advice was given, while MAPS officials claim they remember discussing these issues with the MacMaths before and during the period in which Alex was tested.

The MacMaths did finalize the adoption on Alex's first birthday in July 1988. Thereafter, the MacMaths received a definitive diagnosis that Alex suffered from "global neuro-developmental dysfunction," a disorder that would prevent him from leading a normal, independent life. Alex has continued to require costly medical care, as well as round-the-clock supervision by the MacMaths, who fear that Alex's unpredictable behavior will lead to injury to himself or possibly to others. The family has attended counseling to deal with the emotional burdens of caring for Alex.

In July 1991 the MacMaths filed suit against both MAPS and Chosen Children in a six-count complaint. The court (*Perkins, J.*) dismissed the action against Chosen Children for lack of personal jurisdiction. The MacMaths amended their complaint twice, refining their claims against MAPS. In October 1992 the court granted MAPS's motion to dismiss three of the four counts for failure to state a claim on which relief could be granted. In April 1993 the court (*Fritzsche, J.*) granted MAPS's motion for a summary judgment on the one remaining count. The MacMaths challenge only the judgments in favor of MAPS.

In the complaint, the MacMaths allege that MAPS breached a duty it owed to them as prospective adoptive parents by not advising them (1) as to the availability of public subsidies for the care of special needs children, and (2) to postpone finalizing the adoption until Alex's health problems were fully diagnosed. The court granted MAPS's Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted, as well as MAPS's summary judgment motion, on the ground that as a matter of law, there is no affirmative duty to disclose information to adoptive parents, absent a finding that a fiduciary relationship existed between an adoption agency and prospective adoptive parents. When reviewing the grant of a motion to dismiss, or a summary judgment, we view the facts in a light most favorable to the nonmoving party. In reviewing the

---

1. Mary Anne claims that she spoke with Alex's birth mother by telephone, who told her she had been beaten by her boyfriend while pregnant with Alex, and that she had been exposed to drug use during the pregnancy. MAPS objected to this statement as hearsay that cannot be used in support of an affidavit in opposition to a summary judgment motion. M.R.Civ.P. 56(e); M.R.Evid. 801, 802. Additionally, there was de-position testimony by the birth mother that directly contradicted the claim that she was beaten or exposed to drugs while she was pregnant.

2. Exactly what programs were available is never articulated in the record beyond a brief mention of a federal statute that sets eligibility standards for financial assistance in the adoption of special needs children. 42 U.S.C.S. § 673(c)(2) (1993).

grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted, we must determine whether the complaint "allege[d] the elements of a cause of action or facts entitling the plaintiffs to rely on some legal theory." *Stevens v. Bouchard,* 532 A.2d 1028, 1030 (Me.1987). In reviewing a summary judgment, we must determine if the trial court committed an error of law. *Estate of Althenn v. Althenn,* 609 A.2d 711, 714 (Me.1992).

█ The court was correct to conclude that absent a fiduciary relationship, there is no affirmative duty to disclose information. *See Eaton v. Sontag,* 387 A.2d 33, 38 (Me. 1978) ("[I]t is not fraud for one party to say nothing respecting any particular aspect of the subject property for sale where no confidential or fiduciary relation exists and where no false statement or acts to mislead the other are made."); *see also Guiggey v. Bombardier,* 615 A.2d 1169, 1173 (Me.1992) (summary judgment proper where no actionable fraud claim can arise absent an active concealment or a duty arising from a confidential relationship); *H.E.P. Dev. Group, Inc. v. Nelson,* 606 A.2d 774, 775 (Me.1992) (summary judgment appropriate on a claim of "intentional nondisclosure" where there is nothing in record to show active concealment or existence of special relationship); *Diversified Foods, Inc. v. First Nat. Bank of Boston,* 605 A.2d 609, 616 (Me.1992) (summary judgment proper where record raises no genuine issue that a false statement was made). There is no allegation that MAPS knew about Alex's condition prior to facilitating the adoption. The only "wrong" that MAPS is accused of is the failure to advise the Mac-Maths to postpone finalizing the adoption and to investigate their legal rights to government subsidies. The duties that MAPS undertook in facilitating the MacMaths' adoption of Alex did not require the agency to give advice of this nature. We will not recognize the existence of a fiduciary duty to disclose information in this circumstance.

This opinion is consistent with the findings of courts in other jurisdictions that have dealt with "wrongful adoption" as a cause of action, and which have been reluctant to recognize an affirmative duty to disclose information. In the earliest case to recognize a claim for wrongful adoption, the court held that the parents of an eighteen-year-old whom they had adopted as an infant had an actionable fraud claim against the adoption agency for intentionally misrepresenting the child's background. *Burr v. Board of Cty. Com'rs of Stark Cty.,* 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986). "It is not the *mere failure to disclose* the risks inherent in this child's background which we hold to be actionable," the Ohio Supreme Court wrote, "[r]ather it is the deliberate act of misinforming this couple which deprived them of their right to make a sound parenting decision." *Id.* 491 N.E.2d at 1109 (emphasis added).

Courts in other states have followed the Ohio court's lead in not recognizing a cause of action for mere failure to disclose information to adoptive parents. *Foster by Foster v. Bass,* 575 So.2d 967, 981 (Miss.1990); *Petrowsky v. Family Serv. of Decatur,* 165 Ill. App.3d 32, 116 Ill.Dec. 42, 518 N.E.2d 664, 668 (4 Dist.1987). The concern often expressed is that adoption agencies must not be put in the position of guaranteeing the health of the children they place, or that adoption agencies have the burdensome duty to discover and disclose every bit of health information regarding the children. *Meracle v. Children's Serv. Soc. of Wis.,* 149 Wis.2d 19, 437 N.W.2d 532, 537 (1989); *Michael J. v. L.A. Cty. Dept. of Adoptions,* 201 Cal.App.3d 859, 247 Cal.Rptr. 504, 513 (2 Dist.1988).

When the adoption agency has affirmatively assumed responsibility to inform adoptive parents of the child's biological background, courts have found a breach of a duty when the adoption agency either gives erroneous information or withholds information in its possession. *M.H. v. Caritas Family Servs.,* 488 N.W.2d 282, 288 (Minn.1992); *Roe v. Catholic Charities,* 225 Ill.App.3d 519, 167 Ill.Dec. 713, 724, 588 N.E.2d 354, 365 (5 Dist.1992). Even in these cases, however, the courts have emphasized that the breach occurred as a result of the adoptive parents requesting information that was then provided by the agency erroneously. In the instant case, as stated above, there is no indication that MAPS misinformed the MacMaths or withheld information regarding Alex's health

**362**

or background. The allegation made is that MAPS had a duty to inform the MacMaths of government programs that might assist them in their care of Alex. Because we hold that MAPS did not assume a duty to provide such advice or information to the MacMaths, the failure to do so was not a breach.

The entry is:

Judgment affirmed.

All concurring.