STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-02-125

SHERI A. LEROY and
GARY L. LEROY,

           Plaintiffs

v.

MAINE CHILDREN'S HOME,

           Defendant

ORDER

DONALD L. GARBRECHT
LAW LIBRARY

SEP 30 2002

This matter is before this court on the Defendant's motion to dismiss pursuant to M.R.Civ.P. 12(b)(6).

## FACTS

On February 24, 1997, Plaintiffs Sheri and Gary Leroy (the Leroys) signed an adoption services contract with Defendant Maine Children's Home (MCH). In a letter dated June 27, 1997, MCH notified the Leroys that they had been accepted as candidates for adoption. In May 1998, the Leroys decided to adopt the expected baby of Christopher Billings (Billings) and Valerie Bickford (Bickford). Bickford approved the Leroys as adoptive parents.

Bickford gave birth to Baby Hannah on June 26, 1998. Two weeks before the birth, MCH wrote Billings about Bickford's intent to place the baby for adoption, but did not send Billings a "waiver of notice form" (waiver form) that operates as consent to adoption. Billings did not respond. On June 29, 1998, MCH sent Billings a certified letter, without including a waiver form that

notified him about the planned adoption and asked him to contact MCH. Although Billings' stepfather signed for the certified letter, Billings did not reply. The Leroys were unaware of Billings' noncooperation.

In the hospital, Baby Hannah was diagnosed with pneumonia and respiratory stress and therefore remained hospitalized. During this time, the Leroys reconfirmed Bickford's commitment to place the baby for adoption with the Leroys, and the Leroys began bonding with Baby Hannah. MCH assured the Leroys that Billings was willing to sign a waiver.

On July 6, 1998, upon discharge from the hospital, Baby Hannah was placed with the Leroys, pursuant to a "legal-at-risk" agreement. The agreement recognized the inherent risk until the birthmother signed a "surrender and release" before a probate judge, but did not mention the risk of the birthfather failing to sign a waiver. The agreement also did not mention the consequences of MCH's failure to apply to the probate court for an order to serve Billings with notice of Bickford's intent to consent to the adoption. Although Billings told MCH of his willingness to consent to the adoption in a telephone conversation on July 21, he failed to attend meetings scheduled with MCH on July 29 and August 5. On August 13, 1998, MCH sent a second certified letter to Billings, enclosing a waiver form and a medical history form. Jennifer, a woman claiming to be Billings' fiancé, ultimately told MCH that Billings would not sign the waiver form, but instead wanted to raise his daughter.

On October 19, 1998, MCH, the LeRoys, and Billings met. MCH neglected to bring a waiver form to the meeting. A week later MCH told the LeRoys that Billings was not cooperating. In November 1998, MCH obtained a court order notifying Billings of the pending adoption.

2

On January 28, 1999, Billings petitioned the probate court to establish his parental rights. The LeRoys, in turn, petitioned to adopt Baby Hannah and terminate Billings' parental rights. The probate court appointed a guardian ad litem for Baby Hannah. The guardian ad litem found that the situation was "the most difficult and potentially heart wrenching" that she had ever encountered. (Pls.' Compl. at ¶24.) Fearing the loss of Baby Hannah in contested proceedings, the LeRoys signed a consent agreement in November 2000, granting Billings' visitation. On November 20, 2000, the Probate Court approved the LeRoys' adoption of Baby Hannah.

On May 6, 2002, the LeRoys filed suit against MCH, claiming malpractice, negligent infliction of emotional distress, breach of fiduciary duty, negligent misrepresentation, breach of contract, and punitive damages.

### DISCUSSION

The Defendant's motion pursuant to M.R.Civ.P. 12(b)(6) tests the legal sufficiency of the Plaintiffs' complaint. In re Wage Payment Litigation, 2000 ME 162, ¶3, 759 A.2d 217, 220. When reviewing the Defendant's motion to dismiss, the allegations in the Plaintiffs' complaint are deemed admitted and viewed in a light most favorable to the Plaintiffs. *See id.* This court should only dismiss the various claims in the Plaintiffs' complaint if it appears beyond doubt that the Plaintiffs cannot prove under any set of facts that they are entitled to relief. *See id.*

## Malpractice Claim

In a malpractice claim, the Plaintiffs must allege that (1) the Defendant breached a duty owed to the Plaintiffs to conform to a certain standard of conduct; and that (2) by breaching its duty, the Defendant proximately caused the Plaintiffs to suffer an injury or a loss. *See* Niehoff v. Shankman & Assocs. Legal Ctr., P.A., 2000 ME 214, ¶ 7, 763 A.2d 121, 124. The Plaintiffs alleged in the complaint that the Defendant owed a duty to the Plaintiffs to help them arrange and complete the adoption of Baby Hannah with reasonable care. In addition, the Plaintiffs alleged that the Defendant breached its duties to the Plaintiffs by failing to have Billings' sign a waiver form, by failing to immediately obtain a court order authorizing service on Billings giving him notice that Bickford consented to the adoption, and by failing to explain to the Plaintiffs the consequences of having Baby Hannah placed with them without Billings' consent. Finally, the Plaintiff alleged that the Defendant's breach of duties to the Plaintiffs directly and proximately caused the Plaintiffs to suffer emotional and financial losses. The Defendant argues that a duty to aggressively pursue any and all means to obtain the consent of Billings to relinquish his parental rights violates public policy and statutory and regulatory law by disregarding the best interests of the child. However, at this stage of litigation it cannot be stated beyond a doubt that public policy reasons or a particular statute or regulation preclude the Plaintiffs from relief under any set of facts. Accepting the allegations in the complaint as true, this court must find that the Plaintiffs have stated the requisite elements of a malpractice claim.

## Negligent Infliction of Emotional Distress Claim

In a negligent infliction of emotional distress claim, the Plaintiffs must allege that (1) the Defendant owed a duty to the Plaintiffs; (2) the Defendant breached its duty; (3) the Plaintiffs suffered severe emotional distress; and (4) the Defendant's breach caused the Plaintiffs' severe emotional distress. *See* Curtis v. Porter, 2001 ME 158, ¶¶18, 20, 784 A.2d 18, 25. Whereas there is no general duty to avoid negligently causing emotional harm to others, the Law Court has recognized such a duty in bystander liability actions, in circumstances where a special relationship exists between the parties, and in circumstances where the wrongdoer has committed another tort. *Id.* ¶¶18,19.

In the present case, the Plaintiffs alleged in the complaint that they had a special relationship with the Defendant, creating a duty of care that the Defendant negligently breached, which in turn directly and proximately caused the Plaintiffs to suffer severe emotional distress. The Defendant argues that the allegation of a special relationship between the parties is unsupported by the facts and is therefore a legal conclusion. However, the parties have a relationship based on contract and also defined, in part, by regulations promulgated by the Maine Department of Human Services. *See* Me. Dep't of Hum. Serv. Reg. 10 148, Ch. 19 (2002) (concerning the rules providing for the licensing of child placing agencies with and without adoption programs). Moreover, the Law Court has noted that a special relationship can exist in the context of the physician-patient relationship, the hospital-family of the deceased relationship, and the psychotherapist-patient relationship. Bryan R. v. Watchtower Bible and Tract Soc'y of New York, Inc.,1999 ME 144, ¶31, 738 A.2d 839, 848. When this court views the facts in the complaint in a light most

5

favorable to the Plaintiffs, however, a special relationship might exist between the parties for purposes of a motion to dismiss. In the alternative, the Plaintiffs have alleged that the Defendant has committed another tort, namely malpractice. Therefore, this court finds that the Plaintiffs have stated the requisite elements of a negligent infliction of emotional distress claim.

**Breach of Fiduciary Duty Claim**

In a breach of fiduciary duty claim, the Plaintiffs must allege that (1) they actually placed their trust and confidence in fact with the Defendant; and (2) the relationship between the Plaintiffs and the Defendant was marked by the latter party's great disparity of position and influence. *See* Bryan R., 1999 ME 144, ¶19, 738 A.2d 839, 846. Moreover, "[i]n order to survive a motion to dismiss a claim for breach of fiduciary duty, the plaintiff must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship." *Id.* ¶21. In this case, the Plaintiffs alleged that they placed their trust and confidence with the Defendant, which was in a position to arrange and complete the adoption, but instead breached its fiduciary duties. The Plaintiffs also specifically alleged that their relationship with the Defendant was based upon a written contract with implied obligations, which caused the Plaintiffs to pursue the adoption of Baby Hannah.

The Defendant argues that the Law Court has found that an adoption agency has no fiduciary duty to prospective adoptive parents, requiring the adoption agency to recommend whether to proceed with an adoption once the process has been started, or to offer legal advice. *See* MacMath v. Maine Adoption Placement Serv., 635 A.2d 359, 361 (Me. 1993) (holding that an

adoption agency was not under a duty to advise adoptive parents to postpone an adoption until the adoptive child's health problems were diagnosed, nor to investigate the adoptive parents' legal rights to government subsidies).[1] However, the MacMath holding concerned an adoption agency that had not withheld information from the adoptive parents about an adopted child's health or background. *Id.* at 361-62. In the present case, the Plaintiffs alleged in the complaint that the Defendant not only withheld pertinent information, but also affirmatively misled them into believing that there were no obstacles to the adoption. Further, evolving law from other states suggest the relationship between an adoption agency and adoptive parents is fiduciary in nature. Gibbs v. Ernst, 647 A.2d 882 (Pa. 1994). Since other claims will survive this motion, it is premature to dismiss the claim at this point. However, I reserve the right to reconsider when the record is more fully developed.

**Negligent Misrepresentation Claim**

In a negligent misrepresentation claim, the Plaintiffs must allege that the Defendant (1) made a negligently false or misleading statement; (2) in the course of its business; (3) for the guidance of the Plaintiffs in their business transactions; (4) justifiably relied upon by the Plaintiffs; (5) to the Plaintiffs' pecuniary detriment. *See* Perry v. H.O. Perry & Son Co., 1998 ME 131, §5, 711 A.2d 1303, 1305 (citing Chapman v. Rideout, 569 A.2d 829 Me. 1990), which adopted the RESTATEMENT (SECOND) OF TORTS § 552(1) (1977)). The Plaintiffs alleged in their complaint that the Defendant negligently made false and misleading statements, regarding the status of Billings' consent to the adoption of Baby Hannah. In

---

[1] After the MacMath decision, the Maine Legislature enacted legislation requiring an adoption agency to collect medical and genetic information on the adoptive child and its birth parents, which the adoption agency must then disclose to prospective adoptive parents. 22 M.R.S.A. §8205 (2002).

7

addition, the Plaintiffs alleged that they reasonably relied on the Defendant's statement, which was made in the context of a client contracting with an adoption agency for its professional services, causing the Plaintiffs financial losses. The Defendant argues that the adoption of child is not a business transaction and that the Plaintiffs cannot plausibly establish that the Defendant's actions caused their financial losses. However, because the court takes the Plaintiffs' allegations as true at the motion to dismiss stage, this court needs to only verify that the requisite elements of a cause of action are detailed in the complaint, which they are.

**Breach of Contract Claim**

In a breach of contract claim, the Plaintiffs must allege the elements of a legally enforceable contract consisting of (1) a meeting of the minds; (2) consideration; and (3) mutuality of obligations. *See* <u>Dom J. Moreau & Son, Inc. v. Fed. Pac. Elec. Co.</u>, 378 A.2d 151,153 (Me. 1977). The Plaintiffs alleged in their complaint that they signed a contract with the Defendant on February 24, 1997. This contract bound the Defendant to advise and assist the Plaintiffs in the adoption process, and in return the Plaintiffs had to attend group meetings concerning adoption and pay fees to the Defendant for its services. In addition, the Plaintiffs alleged that the contract contained implied terms, which required the Defendant to not only assist the Plaintiffs complete the adoption with reasonable care and skill, but also inform them of any risks that might be encountered in the process. The Plaintiffs then alleged that the Defendants breached the implied contractual terms, which resulted in damages to the Plaintiffs.

8

The Defendants argue that Maine's statutory law precluded the Defendant from obtaining a court order and that a court should not enforce the implied contractual obligations because Maine's public policy would be violated by requiring the Defendant to aggressively obtain the relinquishment of Billings' parental rights. The Law Court has noted that when a court seeks to invalidate a contract because it violates public policy, the court must also consider the parties' freedom to contract. Allstate Ins. Co. v. Elwell, 513 A.2d 269, 272 (Me. 1986) (holding that the terms of an automobile liability insurance policy did not violate public policy as embodied in Maine's Financial Responsibility Law.) Moreover, a court should not lightly set aside a contract. Id. When viewing the allegations of the complaint in a light most favorable to the Plaintiffs, who have alleged the necessary elements of a breach of contract, this court will not dismiss the claim.

**Punitive Damages Claim**

A claim for punitive damages must allege either express or implied malice. St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of New York, 2002 ME 127, ¶32, 802 A.2d 982. In the present case, the Plaintiffs have alleged in the complaint that malice can be implied from the Defendant's actions. Therefore this court will not dismiss the claim at this point. However, given the Maine standard, Tuttle v. Raymond, 494 A.2d 1535 (Me. 1985), it appears questionable whether such damages will be available as a matter of law. I reserve the right to reconsider when the record is more fully developed.

The entry shall be:

Motion to dismiss DENIED on all claims.

Dated: September 19, 2002

G. Arthur Brennan
Justice, Superior Court

RUFUS E. BROWN, ESQ. - PLS
THAD ZMISTOWSKI, ESQ. - DEF

9